# EXHIBIT 17

ARBITRATION BOARD CONVENED IN
NEW YORK, NEW YORK
------------------------------------------------------------x
In the Matter of the Arbitration of

SECURITY INSURANCE COMPANY OF
HARTFORD Itself and as Successor in Interest to
THE FIRE AND CASUALTY INSURANCE
COMPANY OF CONNECTICUT and THE
CONNECTICUT INDEMNITY COMPANY,

                    Claimant,

        -against-

COMMERCIAL RISK REINSURANCE
COMPANY LIMITED (BERMUDA) and
COMMERCIAL RISK RE-INSURANCE
COMPANY (VERMONT),

                    Respondents.

(DIG)
------------------------------------------------------------x

**Panel:**

David Thirkill (Umpire)
Theodor Dielmann
Martin Haber

## INTERIM FINAL AWARD

**Whereas** the parties to the above-referenced proceeding have conducted a hearing from March

5, 2007 through March 9, 2007 before the fully convened Panel; and

**Whereas** the fully convened Panel has deliberated and considered the documents, testimony,

briefs and arguments set forth by both parties;

**The Panel (by a majority decision) hereby issues the following INTERIM FINAL AWARD:**

1.  The 1999 Quota Share Reinsurance Agreement (effective July 1, 1999 through August 31,

    1999) and the 2000 Quota Share Reinsurance Agreements (effective September 1, 2000

    through March 1, 2001) that were the subject of this arbitration are in full force and effect;

2. Respondents are directed to pay Claimant the amount of $20,754,990, which represents balances due under the 1999 and 2000 Reinsurance Agreements within 30 days of the date of the issuance of this Interim Final Award.  Should Respondents fail to do so, Claimant shall be entitled to draw down the security posted by Respondents.

3. Respondents are further directed to pay Claimant interest in the amount of $1,300,000 within thirty days of the date of the issuance of this Interim Final Award.  Any amount not paid shall accrue interest at the rate of 10% per annum.

4. Upon satisfaction by Respondents of the full amounts due and owing under this Interim Final Award, the parties are directed to confer as to the release of security posted by Respondents;

5. All other claims for relief asserted by either party to this arbitration are denied; and

6. This Panel shall remain constituted until all parts of this Order have been fully performed.

Dated this 11th day of March, 2007

By the Panel:

David Thirkill (Umpire)
On Behalf of The Panel

# EXHIBIT 18

-----Original Message-----
From: theo <theo.dielmann@th-dielmann.com>
To: David Thirkill <coomac@comcast.net>; Haber Martin D
<haberlaw@aol.com>; Lewner, Andrew S.; Jacobson, Michele L.; John
Higgins <JHiggins@damato-lynch.com>
Sent: Tue Mar 20 12:13:45 2007
Subject: Re: SICH/CRP /DIG and NON-DIG Arbitrations

Dear Counsel & Co-panelists,
After in-depth deliberation I wish to withdraw as arbitrator from both
the NON-DIG and DIG arbitrations (the Panel of the latter having
remained constituted until all parts of the Order have been fully
performed) Best regards, Theo Dielmann

# EXHIBIT 19

-----Original Message-----
From: Jacobson, Michele L.
Sent: Tuesday, March 20, 2007 5:33 PM
To: 'coomac@comcast.net'; JHiggins@damato-lynch.com; Lewner, Andrew S.
Cc: haberlaw@aol.com
Subject: RE: SICH/CRP /DIG and NON-DIG Arbitrations

Dear Mr. Thirkill and Mr. Haber:

Thank you for your email below.

Security Insurance Company of Hartford does not agree to a postponement
of the hearing dates, and we have informed Mr. Higgins that we fully
expect that those hearing dates will hold firm.

Respectfully,
Michele Jacobson

-----Original Message-----
From: coomac@comcast.net [mailto:coomac@comcast.net]
Sent: Tuesday, March 20, 2007 5:24 PM
To: JHiggins@damato-lynch.com; Lewner, Andrew S.; Jacobson, Michele L.
Cc: haberlaw@aol.com
Subject: Re: SICH/CRP /DIG and NON-DIG Arbitrations


Dear Counsel

Mr. Haber and I note, with regret, the withdrawal of Mr. Dielmann as
party appointed arbitrator for Commercial Risk.

We believe that  Commercial Risk should appoint a replacement as soon
as possible.  Since the hearing is not scheduled to start for over
three months, we do not see any need for postponement unless the
parties mutually agree otherwise.

Thank you

David Thirkill
Umpire

# EXHIBIT 20

-----Original Message-----
From: Higgins, John [mailto:JHiggins@damato-lynch.com]
Sent: Tuesday, March 20, 2007 5:56 PM
To: coomac@comcast.net; Lewner, Andrew S.; Jacobson, Michele L.
Cc: haberlaw@aol.com
Subject: RE: SICH/CRP /DIG and NON-DIG Arbitrations


Mr Thirkill,
Thanks for this, which we have noted.
Best,
JPH

-----Original Message-----
From: coomac@comcast.net [mailto:coomac@comcast.net]
Sent: Tuesday, March 20, 2007 5:24 PM
To: Higgins, John; alewner@stroock.com; mjacobson@stroock.com
Cc: haberlaw@aol.com
Subject: Re: SICH/CRP /DIG and NON-DIG Arbitrations

Dear Counsel

Mr. Haber and I note, with regret, the withdrawal of Mr. Dielmann as
party appointed arbitrator for Commercial Risk.

We believe that  Commercial Risk should appoint a replacement as soon
as possible.  Since the hearing is not scheduled to start for over
three months, we do not see any need for postponement unless the
parties mutually agree otherwise.

Thank you

David Thirkill
Umpire

# EXHIBIT 21

# STROOCK

March 20, 2007                                                **BY EMAIL**

Andrew S. Lewner
Direct Dial  212-806-5820
Direct Fax  212-806-7820
Alewner@stroock.com

John P. Higgins, Esq.
D'Amato & Lynch
70 Pine Street
New York, New York 10270-0110

Re:    Arbitrations between Security Ins. Co. of Hartford, et. al. and Commercial Risk
       Reinsurance Company Limited (Bermuda) and Commercial Risk Re-Insurance
       Company (Vermont) (DIG and Non-DIG)

Dear John:

I write in relation to Mr. Dielmann's email of earlier today.  In light of Mr. Dielmann's
unprecedented early withdrawal, we must insist that you provide us the details of any
information that you or your client have, or any conversations that either you or your
client have had with Mr. Dielmann concerning his actions.  If we do not receive this
information by the close of business tomorrow, we will have no choice buy to bring this
issue to the Panel.  Obviously, we remain fully committed to the previously agreed June
25 - 29, 2007 hearing dates, and fully expect that those hearing dates will hold firm.

Very truly yours,

Andrew S. Lewner

cc:  Michele L. Jacobson

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI
NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

# EXHIBIT 22

# D'AMATO & LYNCH

LAWYERS

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212-269-0927
WWW.DAMATO-LYNCH.COM
CABLE ADDRESS
DAMCOSH
TELEX 960085 DCOS UI NYK
TELECOPIER: 212-269-3559

LONDON OFFICE
LLOYD'S
ONE LIME STREET
LONDON EC3M 7HA, ENGLAND
TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

Direct Dial: (212) 909-2036
E-Mail: jhiggins@damato-lynch.com

March 20, 2007

*Via E-Mail*
Mr. Andrew Lewner
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Re:   In the Matter of the Arbitrations between Commercial Risk Reinsurance Company
Limited (Bermuda) and Commercial Risk Re-Insurance Company (Vermont) and
Security Insurance Company of Hartford, The Fire and Casualty Insurance Company
of Connecticut and The Connecticut Indemnity Company (DIG )
Our Ref. No.: 812-72904

Dear Andrew:

We received yours of today concerning Mr Dielmann. There will be no need for you to wait
until close of business tomorrow to take such steps as SICH may see fit to take. We will not
be responding in any way to the request for information. We note your expectation and
commitment to the non-DIG hearing dates.

Very truly yours,

John P. Higgins

cc:  Ms. Michele L. Jacobson
/lc

#263744v1

# EXHIBIT 23

# STROOCK

By E-Mail and Overnight Mail

March 27, 2007

Regan A. Shulman
Direct Dial  212-806-6245
Firm Fax  212-806-6006
Rshulman@stroock.com

John P. Higgins, Esq.
D'Amato & Lynch
70 Pine Street
New York, New York 10270-0110

Re:    Arbitration between Security Ins. Co. of Hartford, et. al. and Commercial Risk
       Reinsurance Company Limited (Bermuda) and Commercial Risk Re-Insurance
       Company (Vermont) (Non-DIG)

Dear John:

A week has passed since Mr. Dielmann withdrew as an arbitrator in the above-referenced
arbitration without explanation.  As we advised you in our correspondence of March 20, 2007,
and you "noted" in your response of the same day, Claimant is committed to proceeding with the
Non-DIG arbitration during the week of June 25th, as previously agreed by the parties. You may
recall that the Non-DIG arbitration hearing was postponed for nearly four months from the
originally scheduled March date as an accommodation to Mr. Dielmann.

To date, Commercial Risk Reinsurance Company Limited (Bermuda) and Commercial Risk Re-
Insurance Company (Vermont) (collectively "Commercial Risk") have not appointed a
replacement arbitrator who is available to serve on a panel during the week of June 25, 2007, nor
have you advised us of Commercial Risk's intent to do so.

Please be advised that if we do not receive within ten (10) days, notice of appointment of a
replacement arbitrator who satisfies all applicable requirements and is available for a hearing
during the week of June 25, 2007, we will seek court appointment of a replacement arbitrator.

Very truly yours,

Regan A. Shulman

cc:    André Lefebvre
       Dennis Haver, Esq.
       Michele L. Jacobson, Esq.

**EXHIBIT 24**

-----Original Message-----
From: David Thirkill <coomac@comcast.net>
To: Higgins,  John <JHiggins@damato-lynch.com>
CC: haberlaw@aol.com <haberlaw@aol.com>; Jacobson, Michele L.; Lewner, Andrew S.
Sent: Sun Apr 01 11:57:07 2007
Subject: Re: SICH/CRP /DIG and NON-DIG Arbitrations

Dear Mr Higgins

Thank you for your note of the 20th March responding to mine of the
same date. Although there is still some time to go until the hearing,
Mr Haber and I are of the opinion that the replacement for Mr. Dielmann
should be made as soon as possible.  You should, by now, have had the
opportunity of discussing the matter with Commercial Risk.  Would you
kindly advise us by Wednesday of this week as to the replacement.


Thank you and regards

David Thirkill
Umpire

On Mar 20, 2007, at 5:56 PM, Higgins, John wrote:

> Mr Thirkill,
> Thanks for this, which we have noted.
> Best,
> JPH
>
> -----Original Message-----
> From: coomac@comcast.net [mailto:coomac@comcast.net]
> Sent: Tuesday, March 20, 2007 5:24 PM
> To: Higgins, John; alewner@stroock.com; mjacobson@stroock.com
> Cc: haberlaw@aol.com
> Subject: Re: SICH/CRP /DIG and NON-DIG Arbitrations
>
> Dear Counsel
>
> Mr. Haber and I note, with regret, the withdrawal of Mr. Dielmann as
> party appointed arbitrator for Commercial Risk.
>
> We believe that  Commercial Risk should appoint a replacement as soon
> as possible.  Since the hearing is not scheduled to start for over
> three months, we do not see any need for postponement unless the
> parties mutually agree otherwise.
>
> Thank you
>
> David Thirkill
> Umpire
>

1

# EXHIBIT 25

From: Higgins, John [mailto:JHiggins@damato-lynch.com]
Sent: Wednesday, April 04, 2007 6:26 PM
To: Jacobson, Michele L.
Cc: Lewner, Andrew S.; coomac@comcast.net; haberlaw@aol.com;
theo.dielmann@th-dielmann.com
Subject: Non-DIG


Michele,
I'm sorry to not having had a chance to respond today. We will have a
letter in your hands tomorrow on an arbitrator for non-DIG.

Best,
JPH

John P. Higgins
D'Amato & Lynch
70 Pine Street
New York, New York 10270-0110
Direct Dial:  (212) 909-2036
Main No:  (212) 269-0927
E-mail:  JHiggins@damato-lynch.com

**EXHIBIT 26**

# D'AMATO & LYNCH

## LAWYERS

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212-269-0927
WWW.DAMATO-LYNCH.COM
CABLE ADDRESS
DAMCOSH
TELEX 960085 DCOS UI NYK
TELECOPIER: 212-269-3559

LONDON OFFICE
LLOYD'S
ONE LIME STREET
LONDON EC3M 7HA, ENGLAND
TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

Direct Dial: (212) 909-2036
E-Mail: jhiggins@damato-lynch.com

GEORGE G. D'AMATO
LUKE D. LYNCH (1992)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD H. ALENSTEIN
HARRY J. ARNOLD, JR.
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRANHAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIG
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE K. BEATUS
LIZA A. CHAFFIAN

IAN P. DUFFALO
JAMES E. FOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
MARIA T. EHRLICH
RICHARD F. FERRIGNO
DEEANNA M. GALLA
JUDY Y. CHUNG
R. DAVID ADES
JONATHAN L. KRANZ
ARTURO M. BOUTIN
WENDY L. KALNICK

JOHN C. MUCCIFORI
MOLLY Z. BROWN
MAXINE K. NAKAMURA
GERARDO LAPETINA
LAURA S. WEINER
DAVID BERGENFELO
E. REYNOLDS WILSON
JASON B. GRANT
GAVIN J. CURLEY
BRIAN M. MARGOLIES
ASSAF RONEN
ALEXANDER M. RAZI
ANITA G. BAKER
SOTHEARY JOHNMAR
MELEENA M. BOWERS

COUNSEL

ROBERT M. MAKLA
ALBERT B. LEWIS
PETER J. THUMSER

VICTOR F. MUSTELIER
ROBERT GILROY
RICHARD G. McGAHREN

April 5, 2007

**VIA E-MAIL** - *MJacobson@stroock.com*
Ms. Michele L. Jacobson
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Re:    In the Matter of the Arbitrations between Commercial Risk Reinsurance Company
       Limited (Bermuda) and Commercial Risk Re-Insurance Company (Vermont) and
       Security Insurance Company of Hartford, The Fire and Casualty Insurance Company
       of Connecticut and The Connecticut Indemnity Company
       Our Ref. No.: 812-72904 (Non-DIG)

Dear Michelle:

       Commercial Risk Reinsurance Company Limited and Commercial Rick Re-Insurance
Company have appointed Peter Gentile as arbitrator for the non-DIG arbitration.  We
presume that Security Insurance Company of Hartford will appoint Martin Haber.  If you
will confirm that, we will ask Mr. Gentile to contact Mr. Haber to undertake the selection of
a third arbitrator in accordance with the arbitration clauses in the treaties.

#264960v1

Ms. Michele L. Jacobson
Page 2
April 5, 2007

     Please confirm Security's position with regard to the American Arbitration Association acting as default appointer as the treaties indicate.  We will be glad to discuss the issue of affirming all of the proceedings and disclosure conducted thus far.

                                      Very truly yours,

                                      John P. Higgins

/lc
cc:    Mr. Martin D. Haber
       Mr. David Thirkill
       Ms. Regan Shulman
       Mr. Andrew Lewner
       (via e-mail)

#264960v1

# EXHIBIT 27

**1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMMERCIAL RISK REINSURANCE
COMPANY LTD.,

                    Plaintiff,

        v.                      07 Civ. 2772 (VM)

SECURITY INSURANCE COMPANY OF
HARTFORD,

                    Defendant.

------------------------------x

                              April 9, 2007
                              5:17 p.m.
Before:

            HON. VICTOR MARRERO,

                    District Judge

                APPEARANCES

D'AMATO & LYNCH
        Attorneys for Plaintiff
BY:   JOHN P. HIGGINS
      EDWARD ROTH
      JOHN MUCCIFORI

STROOCK & STROOCK & LAVAN, L.L.P.
        Attorneys for Defendant
BY:   REGAN A. SHULMAN
      MICHELE L. JACOBSON

**2**

1    (Case called)
2        THE COURT:  This is a proceeding in the matter of
3    Commercial Risk Reinsurance Company Limited, and others, vers
4    Security Insurance Company of Hartford, docket number 07 Civil
5    27.  I was reading, perhaps this is a typo, but it says 07
6    civil 2722.  The appearance sheet that the parties have signed
7    says that it is 07 civil 2772, so it is one or the other.
8        The plaintiff's submission in support of its motion is
9    docketed as 07 civil 2772.
10        MR. ROTH:  Your Honor, the order to show cause that
11    your Honor signed has 2772, although it is in my handwriting I
12    do believe that is the number that was assigned by the Court.
13        THE COURT:  Be that as it may, whatever the number is,
14    is simple to verify, but at least we don't have the parties
15    wrong.
16        Now, the matter is here on the plaintiff's motion for
17    a preliminary injunction.  The underlying dispute arises from
18    an arbitration proceeding in which an arbitrator issued an
19    award and the defendants are seeking to draw down upon some
20    related letter of credit in order to satisfy the arbitration
21    award.  The plaintiffs are seeking to prevent the defendants
22    from drawing down on that letter of credit.
23        Why don't we just briefly go over the ground rules as
24    to how much time we need for this argument.  It is late in the
25    day, as you know.  We accommodated this request because the

**3**

1    Court has a trial through the balance of this week and this is
2    the only time that we could do on the short schedule that the
3    parties indicated they have before the sky falls.
4        For the plaintiffs, either Mr. Higgins or Mr. Roth,
5    who speaks?
6        MR. HIGGINS:  I will, your Honor.  It is Mr. Higgins.
7        THE COURT:  All right.
8        MR. HIGGINS:  Has the time limit been established?  I
9    shouldn't take too long.
10        THE COURT:  Why don't you indicate what you think you
11    need.  Let me just indicate that we have received your papers,
12    the original petition, the memoranda from both sides and have
13    reviewed them, so at least we have submission familiarity with
14    the basic issues.  You need not go over, in any detail, matters
15    that you already covered.
16        If there is something that you believe requires
17    additional emphasis or that is not sufficiently covered in the
18    material, perhaps you can concentrate on that.
19        MR. HIGGINS:  Thank you, your Honor.
20        THE COURT:  How much time do you think you need for
21    that purpose?
22        MR. HIGGINS:  No more than 10 minutes.
23        THE COURT:  All right.
24        Now, Ms. Jacobson or Ms. Shulman, who speaks?
25        MS. JACOBSON:  Ms. Jacobson.

**4**

1        THE COURT:  Is 10 minutes sufficient?
2        MS. JACOBSON:  I would say somewhere between 10 and
3    15.
4        THE COURT:  Why don't we then begin with plaintiffs
5    having an initial 10 minutes.
6        MR. HIGGINS:  Thank you, your Honor.  I gather my
7    appearance has been noted?
8        THE COURT:  Yes.  We have the notice of appearance
9    that the parties have submitted and the court reporter has a
10    copy of it, so that that will be entered as part of the
11    transcript of this proceeding.
12        MR. HIGGINS:  Thank you.
13        We would initially like to seek the Court's indulgence
14    in modifying the papers to include an additional letter of
15    credit which was located and disclosed by respondents here.  It
16    is letter of credit 91889855 of BNP Peribas in the amount of
17    $638,498.
18        We apologize for the confusion.  Actually, there were
19    at least five and perhaps more letters of credit issued around
20    the same time and this one seemed to get lost in the shuffle.
21        Two letters of credit were delivered as collateral
22    security in this arbitration to Stroock & Stroock & Lavan under
23    the order of the arbitration panel as a provisional remedy.
24    This is a very odd situation because we're faced now with a
25    circumstance where we are seeking a provisional remedy to

5

1  protect the integrity of provisional remedy.
2      We didn't dispute the power of the arbitration panel
3  below to order us to put up the collateral security, but we do
4  dispute the power of the arbitration panel to allow the
5  collateral security to be paid over to the petitioner beneath
6  without first obtaining a confirmation of the award and then
7  having it reduced to a judgment.
8      Here we have the opposite of what you would normally
9  see, which is a plaintiff trying to protect the status quo by
10  restraining a defendant from running off with the money, so to
11  speak, whereas here we have placed the collateral up and what
12  we are seeking to do is keep it there pending resolution of our
13  motion and pending proceedings in this court to determine
14  whether or not the plaintiff is entitled to the funds. And, if
15  so, they'll be there. The security is going nowhere. And they
16  can draw it down or we may otherwise pay it if need be. But we
17  don't believe the arbitration panel has the authority to
18  enforce its own award, as such.
19      So, as I said, this is a very unusual circumstance.
20  We found no cases which are on these facts and none were cited
21  on these facts by our opponents.
22      THE COURT: Mr. Higgins, a question that this issue
23  raised when the Court read the papers in your submission.
24  Under the fact session you state that it is your view that the
25  parties agreed under the treaties to submit any difference of

6

1  dispute to arbitration but then you say arbitration clauses do
2  not submit award enforcement in compliance to the jurisdiction
3  of the arbitrators.
4      But you do acknowledge that you put up letters of
5  credit for the purposes of supporting whatever award may or may
6  not have come under the arbitration proceeding?
7      MR. HIGGINS: Yes, your Honor.
8      THE COURT: So, in that case, the question is whether
9  the draw down or the letters of credit, whether or not it comes
10  from the arbitrator comes from contractual agreement of the
11  parties is binded in the treaties that are integrally connected
12  with the arbitration proceeding.
13      MR. HIGGINS: Well, the underlying debt does, if there
14  is an underlying debt. That comes from the underlying treaty
15  and there is an agreement to arbitrate. And what we've
16  assigned to the panel of arbitrators is the right and duty to
17  decide the merits of the dispute. We haven't assigned any
18  right of enforcement. And the cases are clear that arbitrators
19  don't have the power to enforce their own awards. You have to
20  go to the Court to do that. They couldn't issue a warrant.
21  They couldn't ask a sheriff or a marshal to execute. And in
22  this case the very nature of what the arbitrators awarded in
23  the way of collateral is what the Courts have supported, which
24  is a provisional remedy. The proviso of the provisional remedy
25  is a judgment. It is so that the money will be there to

7

1  satisfy a judgment. If it can be paid over, either before or
2  after an award, then it loses its provisional character and it
3  becomes a final relief as opposed to a provisional relief
4  because it's payment of money --
5      THE COURT: Let me interrupt.
6      Could not parties by a separate agreement, such as
7  letter of credit agreement, provide among themselves that the
8  letter of credit could be drawn down as enforcement of an
9  arbitration award, whether or not the arbitrators so order or
10  whether or not it is within the jurisdiction?
11      Even if it were not within their jurisdiction, could
12  not the parties agree that upon the award the prevailing party
13  could draw down a letter?
14      MR. HIGGINS: Of course, your Honor. The parties
15  could agree but here they haven't. There is no --
16      THE COURT: Is that a matter of dispute then? And I
17  think that is what I gather is exactly what the defendants are
18  disputing. If that's the case then on what basis can this
19  Court grant preliminary injunctive relief?
20      MR. HIGGINS: I'm not exactly sure what the agreement
21  that the respondents are alleging was made other than --
22      THE COURT: That's why we have a factual dispute.
23      MR. HIGGINS: Well, I mean if there is an allegation
24  that there is an agreement of course we have a factual dispute
25  because I'm not aware of any. The citation --

8

1      THE COURT: You are also counsel to the plaintiff?
2      MR. HIGGINS: Here we are counsel to the plaintiff,
3  yes; but the defendant is alleging this agreement and they
4  haven't identified -- they haven't identified what it is. So I
5  suppose there is disagreement in that way.
6      But the point is that the arbitration clause itself
7  doesn't come close to assigning that right to the arbitration
8  panel. It says that judgment on an award can be entered in any
9  Court of jurisdiction and that's exactly what we think they
10  should attempt to do, is enter judgment on the award, get the
11  thing confirmed, and if they have a right to do that, and then
12  take advantage of the collateral that was required to put up.
13      What they attempt here is very analogous to a Court
14  giving a provisional remedy and then paying over the money to
15  one of the litigants before entering a judgment. It would be
16  the same thing. And I'm sure that that wouldn't appeal to your
17  Honor in terms of the way that it should happen.
18      Now, could two parties agree that anyone, the Court or
19  anyone else has the power to do that? Of course. But that
20  would be a very unusual agreement and I should think that that
21  should be very specific and shouldn't be -- one shouldn't look
22  for that agreement in a normal arbitration clause or in a
23  normal reinsurance or contractual relationship.
24      As I said, the cases are clear, arbitrators don't have
25  the power to enforce their own judgments.

9

1    Now, in this case it is a compulsion. The award says
2  pay within 30 days or lose the security. And they're the ones
3  that put -- the panel ordered it put up as a provisional remedy
4  and now the provision -- the judgment is being ignored.
5    So, that's what we have to say about that. I don't
6  know whether it pays, really, to get in too much into the
7  standards of irreparable harm and likelihood of success on the
8  merits but we would say here --
9    THE COURT: Why don't we touch on the question of
10 irreparable harm here, Mr. Higgins because that, too, is an
11 important concern. To what extent is what you are concerned
12 about really a question of dollars and cents?
13    MR. HIGGINS: Well, it is.
14    THE COURT: You put up money. They have your money.
15 If they have wrongfully drawn down upon it and you prevail on
16 the merits, you get it back, with interest. How is that
17 irreparable harm?
18    MR. HIGGINS: Well, that, in itself, we would
19 acknowledge isn't irreparable harm.
20    THE COURT: Then what is?
21    MR. HIGGINS: The abuse of the process itself.
22 Because, as I said, if that can be done in this case that can
23 be done in any case. You can order collateral security put up
24 and then you can just willy nilly pay it over to the other
25 side. There is nothing to stop you under this theory that the

11

1  just money. I think that the irreparable harm is in, as I
2  said, it is an abuse of the process. It is a violation of the
3  provisional nature of the security itself. It is converting it
4  from provisional remedy to a non-provisional remedy.
5    Now, as your Honor pointed out, there is nothing to
6  stop parties from altering those relationships but it hasn't
7  been done in this case. Nothing that the respondent has
8  pointed to has indicated that there was any intent of the
9  parties, or even at the time of the panel to make this other
10 than a provisional remedy. And we suggest that that's the
11 irreparable harm here.
12    In terms of success on the merits, we have referred to
13 a few very serious questions here which don't go to the normal
14 thing you might see which is that the arbitrators made a
15 mistake of law or mistake of fact. Here, none of our defenses
16 really relate to that. The most important one here is that
17 they refused evidence and that is standard under Section 10,
18 paragraph 3, of the FAA, and that section refers to that as
19 arbitrator misconduct.
20    Now, you know, the other side cited some cases but
21 those cases are easily distinguishable. Here it was our only
22 witness on these points and it was rebuttal. And the cases
23 cited against the three witnesses, this was offered as the
24 fourth and the party offering them would not so much as
25 indicate what is being proffered for and the arbitrators just

10

1  defense has put forward. There is no requirement that there be
2  an arbitration award. I mean, there is in this case but there
3  would be no requirement that there would be.
4    THE COURT: But you are positing a set of facts that
5  are not what is before the Court now. It is not a question of
6  willy nilly. It is a question of whether there is a sufficient
7  basis for a draw down upon there being at least a colorable
8  arbitration award that the parties have gone through, the
9  process, and at least a colorable basis under the treaties
10 agreement for the draw down to occur before a judgment is
11 rendered confirming the award -- assuming that that is the
12 basis upon which the defendants are claiming that they have a
13 right to the draw down before the confirmation of the award.
14    MR. HIGGINS: Well, the second point we would
15 certainly dispute: That there is a basis in the contract.
16 Because we are dealing here only with the arbitration clause.
17    The subject of the arbitration was to enforce the
18 contract and we had some defenses to the contract so that is in
19 quasi-judicial proceedings in the arbitration and now it is in
20 judicial proceedings. And, yes, it is a matter of money. A
21 letter of credit is always a matter of money. Other collateral
22 is a matter of money.
23    If it is posted as a provisional remedy, as I say, if
24 the proviso isn't getting a judgment, then it is always the
25 case that there is no irreparable harm in taking it. It is

12

1  said it was cumulative and the Court supported that.
2    That's the main case in support of the defense against
3  our position.
4    THE COURT: Let's discuss that for a moment because,
5  again, the Court is familiar with the law in this case having
6  itself rendered numerous opinions on the question of the scope
7  of the arbitrator's determination of what is relevant and what
8  is cumulative.
9    I think that the standard is fairly deferential on
10 that issue. If an arbitrator denies evidence entirely to one
11 side it is one thing. But if it is a question of whether the
12 arbitrator, in good faith, believes that a particular proffer
13 of evidence is cumulative, as you know, the doctrine on that is
14 that the Courts are not going to second-guess arbitration
15 awards. Otherwise, the entire process would be undermined.
16    MR. HIGGINS: Yes, your Honor. And our cases and our
17 statements on that are more prophylactic than anything else.
18 The arbitrators here did not find that this evidence was
19 cumulative. And in fact that would have been a very difficult
20 thing for any arbitrator to find.
21    This was our witness in rebuttal to the witness put by
22 the petitioners below on the issue of damages -- several
23 aspects of damages. And I don't think -- it was our only
24 witness and what the panel said, it is indicated in the brief,
25 is that they were going to deny us the right to put this

13

1   witness on and they were going to accept the numbers being put
2   forth by the other side. And if they thought they needed more
3   help after -- actually they didn't say it that way.
4       After they decided the substantive issues, they would
5   come back to the parties. And in this case no one came back
6   and we were prevented from putting on our only witness on
7   really the only issue in the case which was how much we owe.
8       And so, it isn't cumulative and discretion stops
9   somewhere. And I think that discretion has to stop well before
10  this. We only called three witnesses. It isn't as if we
11  dragged this thing on forever.
12      THE COURT: Isn't there some issue, Mr. Higgins, about
13  the timeliness of the witness?
14      MR. HIGGINS: Well, two things, your Honor. There
15  wasn't an order other than a preliminary witness list. It was
16  never characterized as anything else. And so, we were
17  certainly not on notice that we had any obligation to provide
18  any other witness list, firstly.
19      Secondly, we did give notice a month before the
20  hearing that we would be putting this witness on as a rebuttal
21  witness. I'm not sure we actually used the word "rebuttal" but
22  we did put in our papers a very lengthy exchange of
23  correspondence. And I hope we don't bore the Court with all of
24  it, but we made a very strenuous attempt to extract evidence of
25  damages from the other side. And it only became apparent that

14

1   we weren't really going to be able to get sufficient evidence
2   of damages from the other side that we decided we had to put on
3   a witness.
4       We never had an expectation of putting on a witness
5   because in these cases the accounting usually works itself out.
6   Here, it never did. The other side never put on sufficient
7   evidence and so we were forced to put on -- well, we were
8   forced to attempt to put on a witness to straighten the
9   situation out.
10      One of the most critical elements of it was there was
11  very -- well, actually no evidence of distribution of cash
12  position and what was put in was wrong. And we would have put
13  a witness in that would have explained that and that would have
14  caused a very dramatic $3 million shift in the award if it had
15  been done properly. And we didn't have any witness on that
16  because we were prevented from putting that in and we were
17  prevented from putting exhibits in which would have been
18  testified to.
19      THE COURT: All right. Thank you, Mr. Higgins. Why
20  don't we give the defendants the floor?
21      MS. JACOBSON: Thank you, your Honor. The first thing
22  I would like to address is the notion of the security and the
23  issue of irreparable harm.
24      Contrary to what the petitioner's position is, the
25  contract specifically deals with the posting of security.

15

1   That's annexed as Exhibit 1 to my declaration, specifically at
2   pages 7 through 9. In that security provision Commercial Risk
3   was supposed to post the entirety of the amounts that were
4   shown to be owing; whatever my client told them was owing
5   should have been posted.
6       If we turn to page 8 of the contract, that talks about
7   when letters of credit can be drawn down. Essentially it says
8   that if the reinsurer fails to discharge any of its payment
9   obligations, any security that's been posted can be drawn down.
10  It is an unconditional right to draw down security. It doesn't
11  require going anywhere and that's what the contract does
12  provide.
13      Now, if we turn to --
14      THE COURT: Is it your contention that that is what
15  the arbitrator, in essence, interpreted the contract to say and
16  ruled on?
17      MS. JACOBSON: That is our contention.
18      And, in fact, if we take a look at Exhibit number 5 to
19  my declaration which is the actual order imposing the
20  requirement that pre-hearing security be posted, we see in the
21  order that the panel says that the security shall be in the
22  form acceptable to Security Insurance Company of Hartford,
23  i.e., a regulation 114-type security trust fund or a clean,
24  irrevocable letter of credit, or cash.
25      And if we turn back to the security provision in the

16

1   contract, at page 7 at the very first paragraph it talks about
2   a regulation 114 trust or clean irrevocable and unconditional
3   letter of credit. That is exactly what the panel was doing.
4   And, in fact, on the security motion we argued that this
5   provision of the contract required the posting of security,
6   among other things, including the disastrous financial
7   condition of reinsurer here, Commercial Risk.
8       So, it is our absolute contention that the right to
9   the security derives from the contract. It is unconditional
10  and it commits us to draw down without any order of the panel.
11      Now, when the panel, however, issued its pre-hearing
12  security order at Exhibits 5, it imposed an impediment toward
13  the draw down. It said to us, We are going to require the
14  posting of the pre-hearing security but you can't draw on it
15  absent further written instructions from the panel.
16      So, that meant that we couldn't just draw down. It
17  provided an additional impediment.
18      Now, that award was entered by the panel, it was
19  not -- Commercial Risk didn't move to vacate it but what that
20  award said was -- the only inference you can obtain from that
21  order is that when the panel issues a written instruction to
22  draw it down, it can be drawn down. There was no motion to
23  vacated it.
24      That was the order of the panel and that is the
25  understanding that certainly my client has vis-a-vis the whole

17

1    letter of credit issue, completely derived from the contract.
2         Therefore, it is the contract that is self-executing.
3    It is not the final award.
4         THE COURT: A question: What is your contention with
5    regard to whether or not the arbitrator's requesting the
6    posting of pre-award security was permissible under the
7    contract itself?
8         MS. JACOBSON: Well, very clearly, if we turn to the
9    arbitration clause which is at page -- begins at page 15 and
10   goes on to 16, and that's still in Exhibit 1, it says: Any
11   dispute or difference between the company and any reinsurer
12   relating to the interpretation or performance of this contract
13   including its formation or validity, or any transaction under
14   this contract, whether arising before or after termination,
15   shall be subject to arbitration.
16        So, clearly, issues of the adequacy of letters of
17   credit, etc., would be subject to arbitration.  And also draw
18   downs, if that was an issue.
19        And if we go down further in the arbitration clause
20   also on page 16 it says: The arbitrator shall have the power
21   to determine all procedural issues for the holding of the
22   arbitration, including but not limited to inspection of
23   documents, examination of witnesses -- importantly -- and any
24   matter -- other matter relating to the conduct of the
25   arbitration. The arbitrator shall interpret this contract as

18

1    an honorable engagement and not as merely a legal obligation.
2    They are relieved of all judicial formality and may abstain
3    from following the strict rules of law.  The arbitrators may
4    award interest and costs.
5         So, it is a very permissive clause.  It gives the
6    arbitrators expansive powers to determine the shape and the
7    scope of the arbitration proceeding and the procedures that are
8    to be followed in that proceeding.
9         THE COURT: Does that suggest that the issue of
10   whether or not the arbitrators have the authority, which
11   Mr. Higgins is challenging, to order some form of enforcement,
12   is itself an arbitration issue?
13        MS. JACOBSON: Yes.  I mean, we believe that this is a
14   very expansive provision and I would like to --
15        THE COURT: Let me ask, was there any discussion or
16   attempt at any time to bring this matter to the arbitration as
17   an additional dispute between the parties?  And by this matter
18   I mean the plaintiff's challenge here or contention that the
19   arbitrators did not have the authority to issue an enforcement
20   order.
21        MS. JACOBSON: No, Commercial Risk did not -- did not
22   go to the arbitration panel with that kind of complaint.  In
23   fact, the first time we heard of any such complaint was when we
24   learned that there was a TRO application.
25        THE COURT: Well, is it your contention now that if in

19

1    fact there is such a dispute, it is one that should be brought
2    back to the arbitrators?
3         MS. JACOBSON: I don't -- I mean, if they wanted to
4    make an application to the arbitrators I suppose that they
5    could.  I think the word is plain and unambiguous and permits
6    us to draw down.
7         And I might also point out Mr. Higgins spoke lengthily
8    about the opportunity to go into court and get a judgment and
9    how important that was.  This arbitration clause says: The
10   decision, in writing, of the majority of the arbitrators shall
11   be final and binding upon both parties.  Judgment may be
12   entered.
13        Not requiring that judgment be entered in order for
14   certain parties of the award to be effectuated, may be.
15        THE COURT: All right. Anything else?
16        MS. JACOBSON: If I might, I would like to discuss the
17   exclusion of Mr. Passis as a witness.
18        I think the description of Mr. Passis' exclusion
19   omitted certain items and was incorrect in certain regards.
20   First of all, Mr. Passis was not on the preliminary witness
21   list and did not show up until February.
22        Now, I think it is important to note that this
23   arbitration was scheduled to go forward in December and all
24   fact discovery had truly been ended in November.  We were on
25   the cusp of the arbitration hearing.  I think two weeks before

20

1    the hearing we got word that Commercial Risk's party arbitrator
2    was ill so the hearing got put off.
3         Okay.  That's the very end of November we get that
4    decision.  Mr. Passis was not even on the radar screen and we
5    were supposed to go to hearing within two weeks.  In fact, the
6    parties were already drafting their pre-hearing briefs; no
7    mention of Mr. Passis.
8         If Mr. Passis and his testimony was so material we
9    should have heard about him long before February.
10        Now, there was no realistic opportunity to depose
11   Mr. Passis.  Mr. Passis was not a percipient witness.  He
12   wasn't around at the time that all of the events took place.
13        According to Mr. Higgins at the hearing, and that's in
14   Exhibit 14, page 1001, Mr. Passis was going to "authenticate
15   certain statements that were being put in by Commercial Risk."
16        And specifically, when asked whether Mr. Passis'
17   testimony might "affect the panel's view of what damage would
18   be" the award -- the damages award should be, the response was
19   It could be.  And that's on page 1005.  Not definitive.
20        In fact the umpire asked:  So that's a purely
21   hypothetical?
22        And the answer was:  Yes.
23        That's all detailed, the transcript on Exhibit 14 to
24   my declaration, page 1005.
25        Now, despite what Mr. Higgins said, the panel actually

21

```
1   took in Mr. Passis' damages exhibits, exhibits numbers 222 and
2   223, and that's at Exhibit 19 of my declaration at page 1206.
3   And they were permitted, by the panel's ruling, to
4   cross-examine -- to call for cross-examination one of our
5   witnesses for a second time on those very same exhibits. And
6   they did.
7        And lastly I would like to say that it is clear that
8   the panel must have taken into account some of what was in
9   those exhibits because we were not -- my client was not given
10  all of the interests that it was seeking. It got only about
11  one third. We don't know precisely what they did but, very
12  plainly, they didn't buy what we said lock, stock and barrel.
13       We don't believe that Commercial Risk satisfies any of
14  the prongs for a preliminary injunction. They can't show
15  irreparable harm. We are only talking about money here and
16  there is, in light of the fact that it is nearly insurmountable
17  to wage challenge to an arbitration award on a motion to
18  vacate, they don't show the second prong either.
19       Thank you.
20       THE COURT: Thank you.
21       Mr. Higgins, do you have another response?
22       MR. HIGGINS: I have a few responses or observations.
23  Thank you, your Honor.
24       On the point of what was being ordered, it is pretty
25  clear that we were not putting up a letter of credit under the
```

22

```
1   contract, we were putting up a letter of credit because we were
2   told to by the panel, and that the constriction or restriction
3   on the ability to draw down, though we don't agree with it,
4   necessarily, was not something that we fought at that point
5   because it protected the letter of credit. We would have had
6   to have a crystal ball to ascertain that the panel would allow
7   the letter of credit to be paid over before judgment because
8   that's the standard by which the Courts permit arbitrators to
9   require provisional remedies. There are no cases which permit
10  arbitrators to make decisions on the merits without a hearing.
11  And this arbitration clause certainly doesn't do that; allow --
12       THE COURT: Is it your view, Mr. Higgins, that there
13  is nothing at all in the treaties and the contract between the
14  parties that gave authority for the posting of pre-arbitration
15  security?
16       MR. HIGGINS: Yes. That is our position.
17       THE COURT: So you think --
18       MR. HIGGINS: There is a letter of credit requirement
19  in the ordinary course but in this case one can't really argue
20  that that's what the panel was doing, because there is only a
21  requirement for, in regulatory parlance, unadmitted or
22  non-admitted security which, admittedly, to circle around, the
23  Bermuda company was but the Vermont company was not.
24       So, the Vermont company was not required to post
25  security but, nevertheless, the panel required security to be
```

23

```
1   posted by -- well, jointly the panel just called it Commercial.
2        And so, the panel wasn't -- obviously wasn't trying to
3   enforce provisions under the contract and we don't believe
4   that, without a hearing, we don't think that the arbitrators
5   had the power to do that. Certainly not to order delivery of
6   unencumbered collateral security as a provisional remedy.
7        THE COURT: At any time did you challenge the
8   arbitrator's authority to make such a requirement?
9        MR. HIGGINS: I'm sorry. I don't know what
10  requirement your Honor is referring to.
11       THE COURT: The posting of the pre-arbitration
12  security.
13       MR. HIGGINS: No, we did not challenge it. We put up
14  the security. We challenged it in the first instance on motion
15  but once we were ordered to do it, we put it up because we
16  don't challenge the authority to, of the panel.
17       THE COURT: Could that be construed as a form of
18  waiver?
19       MR. HIGGINS: Well, no, we don't dispute the power of
20  panel to order provisional remedies. We think the law is
21  fairly clear on that. But we do dispute the notion that
22  provisional remedy can be something other than a provisional
23  remedy, something other than collateral security for, to
24  securitize an eventual judgment. We certainly challenge that
25  notion. And we would have, if they had ordered us to pay the
```

24

```
1   money over, we would have challenged it, of course. But it was
2   in the form of letters of credit, it was delivered to counsel
3   and not to the other party, which we insisted on, but it was
4   done and there was the incumbents on it in terms of drawing.
5        I don't think anything has happened since that time
6   which alters the character of the relief. And the only thing
7   that's happened is that the panel has taken it upon themselves
8   to not only render the award but satisfy it.
9        THE COURT: Anything else?
10       MR. HIGGINS: Well, just one minor point going back to
11  the 'may enter.'
12       The reason it is 'may' is because there is no
13  requirement to do it. It is just that if it can't be
14  satisfied. Otherwise, it has to be entered and the 'may'
15  language also refers to the fact that there are many Courts
16  that may have jurisdiction and says it may be entered in any
17  Court's jurisdiction.
18       So, I don't think that that has any significance in
19  terms of statute.
20       THE COURT: All right. I thank you.
21       The Court has reviewed these papers closely when they
22  were filed and the additional briefing that the Court received
23  as of today. I have heard the arguments of the parties here at
24  this proceeding. On this basis I am not persuaded that the
25  plaintiffs have made out any of the prongs necessary to support
```

25

1   the granting of the application.  I am not persuaded that the
2   plaintiffs have indicated that they would suffer irreparable
3   harm here.
4        In view of what is at stake -- which is essentially a
5   money dispute -- the money dispute is literally resolvable by
6   the party that may win on the merits ultimately paying back
7   what may have been improperly drawn down, if in fact the
8   plaintiffs were to prevail on the merits.
9        I don't see where that irreparable harm comes in.
10  Plaintiffs indicate that their view of the irreparable harm
11  enters in the issue of what they characterize as the improper
12  or abuse of the process.  Again, I'm not persuaded that that is
13  the case here.
14       Under the applicable doctrine, the arbitrators have a
15  fairly extensive latitude to interpret the scope of arbitration
16  and make appropriate rulings concerning on that scope.  Those
17  determinations ordinarily are entitled to substantial deference
18  by the Court except as has been indicated in the cases of clear
19  abuse of legal acts or illegal acts or other forms of
20  impropriety.
21       I don't believe that there is sufficient evidence that
22  the standard has been met here.
23       On those grounds, the issue of whether or not the
24  arbitrators improperly excluded evidence, in my view, has not
25  been compellingly demonstrated to the point warranting the

26

1   extraordinary remedy not only of denial of the confirmation of
2   arbitration award but also of granting of preliminary
3   injunctive relief.
4        I also do not believe that the plaintiffs are likely
5   to succeed on the merits given the language of the contract
6   that is at issue here, the parties' agreements, and I also am
7   not persuaded that there are sufficient issues going to the
8   merits as to make the plaintiff's claims later on for
9   litigation and the balance of equities tilting decidedly in the
10  plaintiff's favor because the Court believes that in the
11  reading of the contract that there is sufficient support in the
12  underlying agreements for the posting of the letter of credit
13  and for the draw down of the letter of credit absent a
14  confirmation award.
15       To the extent that there is any dispute regarding that
16  question, that, in itself, as the Court suggested earlier, may
17  be an arbitrable issue that should be -- that would be within
18  the scope of the arbitration dispute and should be resolved in
19  that forum and not in this Court.
20       So, for these essential reasons, the Court will deny
21  the plaintiff's application.  If the parties seek any further
22  litigation in this matter, they should confer and develop a
23  proposed case management plan setting forth the time tables for
24  any additional pretrial proceedings, and you should submit that
25  to the Court for review and enforcement within 10 days of

27

1   today.
2        Thank you.
3        MR. HIGGINS:  Thank you, your Honor.
4        MS. JACOBSON:  Thank you, your Honor.
5             o0o

**EXHIBIT 28**

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

┌─────────────────────────────────┐
│ USDS SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____         │
│ DATE FILED: 4-11-07             │
└─────────────────────────────────┘

COMMERCIAL RISK REINSURANCE
COMPANY LIMITED and
COMMERCIAL RISK RE-INSURANCE COMPANY,

07 Civ. 02772 (VM)

                              Plaintiffs,

**ORDER**

            — against —

SECURITY INSURANCE COMPANY OF
HARTFORD (for itself, and as
Successor in Interest to The Fire and
Casualty Insurance Company of
Connecticut, The Connecticut
Indemnity Company and Employee
Benefits Insurance Company),

                              Defendant.

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Commercial Risk Reinsurance Company Limited and Commercial Risk Re-Insurance Company (collectively "Commercial Risk"), moved by order to show cause on April 5, 2007 for a preliminary injunction to enjoin defendants from attempting to enforce an arbitration award which permits defendant Security Insurance Company of Hartford ("SICH") to draw down on a letter of credit posted by Commercial Risk during recent arbitration proceedings.

The Court received and reviewed the parties' papers prior to a hearing scheduled for April 9, 2007. After hearing arguments from both sides, having fully reviewed the parties' briefs and supporting papers, and giving due consideration to the arguments raised by both sides, for the reasons set forth

on the record at the hearing on that day, the Court finds that Commercial Risk has failed to satisfy any of the standards that warrant granting a preliminary injunction. Accordingly, the Court denies Commercial Risk's motion.

The parties are directed to confer and develop a proposed case management plan to submit to the Court for review and approval in connection with any further proceedings contemplated before this Court on this matter.


**SO ORDERED.**

DATED:    New York, New York
          10 April 2007


                                    _____
                                          Victor Marrero
                                            U.S.D.J.


2

**EXHIBIT 29**

| | |
|---|---|
| **From:** | Lewner, Andrew S. |
| **Sent:** | Monday, April 09, 2007 5:34 PM |
| **To:** | pagentile@optonline.net |
| **Cc:** | haberlaw@aol.com; ccomac@comcast.net; JHiggins@damato-lynch.com; Jacobson, Michele L.; Shulman, Regan |
| **Subject:** | Security Insurance Company of Hartford v. Commercial Risk Reinsurance Company et al (Non-DIG Arbitration) |



SSL-DOCS2-703357
85-v1-Gentile ...

          Mr. Gentile,

We understand that you have been appointed as Commercial Risk's replacement arbitrator to the arbitration panel in the above captioned arbitration.  Accordingly, we ask that you please complete the attached arbitrator questionnaire.  In light of the impending arbitration hearing dates of June 25 - 29, 2007, we respectfully ask that you complete and return the questionnaire within one week.

Respectfully,

Andrew S. Lewner, Esq.
Stroock & Stroock & Lavan, LLP
Direct Dial: 212-806-5820
Desktop Fax: 212-806-7820
E-mail: alewner@stroock.com

1

```
                                                    x
In the Matter of the Arbitration of                 :
                                                    :
SECURITY INSURANCE COMPANY OF                       :
HARTFORD itself and as successor in interest to     :
THE FIRE AND CASUALTY INSURANCE                     :
COMPANY OF CONNECTICUT, THE                         :
CONNECTICUT INDEMNITY COMPANY, and                  :
EMPLOYEE BENEFITS INSURANCE                         :
COMPANY,                                            :
                                                    :
                              Claimant,             :
            - against –                             :
                                                    :
COMMERCIAL RISK REINSURANCE                         :
COMPANY LIMITED (BERMUDA) and                       :
COMMERCIAL RISK RE-INSURANCE                        :
COMPANY (VERMONT),                                  :
                                                    :
                              Respondents.          :
(Non-DIG Arbitration)
                                                    x
```

## ARBITRATOR QUESTIONNAIRE

To assist the parties in evaluating the qualifications of persons nominated to serve as arbitrator in the arbitration between the parties listed above, and to identify any potential conflict of interest, please supply the following information.

1. Name: _____

Company: _____

Address: _____

Telephone: _____

Home Address: _____

Home Telephone: _____

2. CURRENT EMPLOYMENT (Position and Length of Employment).

Position Title: _____

Length of Employment: _____

Principal Duties: _____

PAST QUALIFYING EMPLOYMENT (if not currently an officer of an insurance or reinsurance company).

_____
_____
_____
_____
_____
_____

Please attach a resume or curriculum vitae.


3. Are you presently or have you ever been an employee, officer, director, shareholder, agent or consultant of any of the parties listed below, or of such parties' subsidiaries, affiliates or parent companies.

Security Insurance Company of Hartford
The Fire and Casualty Insurance Company of Connecticut
The Connecticut Indemnity Company
Employee Benefits Insurance Company
Royal & Sun Alliance
ARTIS Group
The SCOR Group
Commercial Risk Reinsurance Company Limited (Bermuda)
Commercial Risk Re-Insurance Company (Vermont)
NHE Group
Occupational Risk Services ("ORS") Group
High Powered Programs ("HPP") Group


[ ] Yes [ ] No

If yes, please explain.


_____
_____
_____

4. Have you ever served as an arbitrator, umpire, attorney, or expert witness in a matter involving any of the parties listed above or any subsidiaries, affiliates or parent companies of such parties?

[ ] Yes [ ] No

If yes, please explain.

_____

_____

_____

5. Have you ever had any involvement in an insurance or reinsurance transaction or dispute involving any of the parties listed above or any subsidiaries, affiliates or parent companies of such parties?

[ ] Yes [ ] No

If yes, please explain.

_____

_____

_____

6. If you are currently are or have previously been affiliated with a law firm, has that law firm ever represented any of the parties listed above or any subsidiaries, affiliates or parent companies of such parties?

[ ] Yes [ ] No

If yes, please explain.

_____

_____

_____

7. If you currently are or have previously been affiliated with a law firm, has that law firm to your knowledge ever represented a client which was adverse to any of the parties listed above or any subsidiaries, affiliates or parent companies of such parties in any proceeding of any kind?

[ ] Yes [ ] No

If yes, please explain.

_____
_____
_____

8. To your knowledge, do any of companies with which you are presently affiliated or in which you presently have a financial interest have an ongoing business relationship with any of the parties and/or affiliates listed above?

[ ] Yes [ ] No

If yes, please explain.

_____
_____
_____

9. Have you ever had any involvement in an insurance or reinsurance transaction or dispute involving any of the specific claims, policies and/or treaties at issue in this matter as listed below?

This arbitration involves whether payments made by Security Insurance Company of Hartford itself and as Successor in Interest to The Fire and Casualty Insurance Company of Connecticut, The Connecticut Indemnity Company, and Employee Benefits Insurance Company ("Claimant") for losses incurred in connection with the NHE Program, the ORS Program and the HPP Program are reimbursable to Claimant, pursuant to the terms of reinsurance agreements issued to Claimants by Commercial Risk Reinsurance Company Limited (Bermuda) and Commercial Risk Re-Insurance Company (Vermont).

[ ] Yes [ ] No

If yes, please explain.

_____
_____
_____

10. Have you ever served on an arbitration panel with Martin Haber?

[ ] Yes [ ] No

If yes, for each such arbitration, state the approximate date of commencement and termination (or whether still pending) and the respective capacities in which you and Martin Haber acted, i.e., as arbitrator or umpire.

_____
_____
_____
_____

11. Have you ever served on an arbitration panel with David Thirkill?

[ ] Yes [ ] No

If yes, for each such arbitration, state the approximate date of commencement and termination (or whether still pending) and the respective capacities in which you and David Thirkill acted, i.e., as arbitrator or umpire.

_____
_____
_____
_____

12. Have you ever served as an arbitrator, umpire, expert witness or consultant in an arbitration or litigation at the request of any counsel involved in this arbitration?

D'Amato & Lynch

Stroock & Stroock & Lavan LLP

[ ] Yes [ ] No

If yes, identify counsel and disclose type of service and approximate date so engaged.

_____
_____
_____
_____

13. This arbitration involves whether payments made by Security Insurance Company of Hartford itself and as Successor in Interest to The Fire and Casualty Insurance Company of Connecticut, The Connecticut Indemnity Company, and Employee Benefits Insurance Company ("Claimant") for losses incurred in connection with the NHE Program, the ORS Program and the HPP Program are reimbursable to Claimant pursuant to the terms of reinsurance agreements issued to Claimants by Commercial Risk Reinsurance Company Limited (Bermuda) and Commercial Risk Re-Insurance Company (Vermont).

Would these facts or circumstances prevent you from rendering an unbiased decision in this arbitration?

[ ] Yes [ ] No

If yes, please explain.

_____
_____
_____
_____

14. Are you aware of any facts or circumstances which (1) might impair your ability to serve or (2) might create an appearance of partiality on your part in the above-captioned arbitration?

[ ] Yes [ ] No

If yes, please explain.

_____
_____
_____
_____

15. Are you available to serve as an arbitrator in this arbitration during the week of June 25 – June 29, 2007.

_____
_____
_____
_____

Signature: _____
Date: _____