UNITED STATES DISTRICT COURT                        **TO BE FILED**
SOUTHERN DISTRICT OF NEW YORK                       **UNDER SEAL**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
SECURITY INSURANCE COMPANY OF HARTFORD               :
(for Itself and as Successor in Interest to          : Docket No. _____
the Fire and Casualty Insurance Company of Connecticut  :
and the Connecticut Indemnity Company),              :
                                                    :
                               Petitioner,           :
                                                    :
              -against-                              : **NOTICE OF**
                                                    : **PETITION TO CONFIRM**
                                                    : **ARBITRATION AWARD**
COMMERCIAL RISK REINSURANCE COMPANY                  :
LIMITED (BERMUDA) and COMMERCIAL RISK RE-            :
INSURANCE COMPANY (VERMONT),                         :
                                                    :
                               Respondents.          :
                                                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLEASE TAKE NOTICE that upon the annexed Petition to Confirm Arbitration Award,

dated August 10, 2007, the accompanying Declaration of Michele L. Jacobson in Support of the

Petition to Confirm Arbitration Award, dated August 10, 2007, and the Appendix of Exhibits

deemed annexed thereto, the accompanying Memorandum of Law in Support of the Petition to

Confirm Arbitration Award, dated August 10, 2007, Petitioner Security Insurance Company of

Hartford, itself and as successor in interest to the Fire and Casualty Insurance Company of

Hartford and the Connecticut Indemnity Company ("SICH"), hereby petitions the United States

District Court, Southern District of New York, at the United States Courthouse, 500 Pearl Street,

New York, New York, on a date and at a time to be determined by the Court, for an Order,

pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, and the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 207, confirming the arbitration award (the

"Award") against Commercial Risk Reinsurance Company Limited (Bermuda) and Commercial

Risk Re-insurance Company (Vermont)(together "CR"), effective July 10, 2007, issued on July 14, 2007 and bearing a signature date of July 16, 2007 in the arbitration proceeding entitled <u>In the Matter of the Arbitration of Security Insurance Company of Hartford v. Commercial Risk Reinsurance Company Limited (Bermuda) and Commercial Risk Re-insurance Company (Vermont) (Non-DIG)</u> and for Judgment as follows:

        A.      directing Respondent Commercial Risk Reinsurance Company Limited (Bermuda)("CR Bermuda") to pay Petitioner $2,512,816.79, representing its balance due under the Treaties;

        B.      directing Respondent Commercial Risk Re-insurance Company (Vermont)("CR Vermont") to pay Petitioner $417,714.65, representing its balance due under the Treaties;

        C.      directing Respondent CR Bermuda to pay Petitioner $330,478.21, which represents the pre-Award interest on the balances due;

        D.      directing Respondent CR Vermont to pay Petitioner $66,959.73, which represents the pre-Award interest on the balances due;

        E.      directing that any amounts not paid by August 21, 2007, which is thirty business days from the effective date of the Award, shall accrue at an interest rate of 10% per annum;

        F.      directing that if either or both of Respondents fail to make the payments directed in the paragraph above, Petitioner may draw down upon security posted by CR in the form of letters of credit from BNP Paribas, LOC No. 91889854, in the amount of $848,395.00, and LOC No. 91889856, in the amount of $212,099.00 to partially satisfy the amounts so due;

G.    declaring that the five Treaties that were the subject of the Arbitration between SICH and CR – the NHE Quota Share Reinsurance Agreement incepting March 15, 2000, the NHE Quota Share Reinsurance Agreement incepting March 15, 2001, the ORS Quota Share Reinsurance Agreement incepting September 1, 2001, the HPP Quota Share Reinsurance Agreement incepting May 1, 2000, and the HPP Quota Share Reinsurance Agreement incepting May 1, 2001 – are valid, binding and enforceable and remain in full force and effect;

H.    declaring that Respondents are required to remit payment pursuant to the terms of the Treaties as cession statements are issued to them;

I.    declaring that Respondents may not raise as a defense to future payments any issue already brought before the Arbitration Panel;

J.    awarding SICH its costs in this action; and

K.    awarding any such other relief as this court deems appropriate.

Dated: New York, New York
        August 10, 2007

STROOCK & STROOCK & LAVAN LLP

By: _____
     Michele L. Jacobson (MJ 4297)
*Attorneys for Respondent-Cross-Petitioner Security*
*Insurance Company of Hartford*
180 Maiden Lane
New York, New York 10038
(212) 806-5400

-3-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**TO BE FILED
UNDER SEAL**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITY INSURANCE COMPANY OF HARTFORD
(for Itself and as Successor in Interest to
the Fire and Casualty Insurance Company of Connecticut
and the Connecticut Indemnity Company),

Petitioner,

-against-

COMMERCIAL RISK REINSURANCE COMPANY
LIMITED (BERMUDA) and COMMERCIAL RISK RE-
INSURANCE COMPANY (VERMONT),

Respondents.

Docket No. _____

**PETITION TO CONFIRM
ARBITRATION AWARD**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Petitioner, Security Insurance Company of Hartford, for itself and as successor in interest

to the Fire and Casualty Company of Connecticut and the Connecticut Indemnity Company,

("SICH"), by its attorneys Stroock & Stroock & Lavan LLP, respectfully petitions this Court for

an order and judgment, pursuant to 9 U.S.C. §§ 9 and 207, confirming an award issued by the

arbitration panel presiding over an underlying arbitration proceeding between SICH and its

reinsurers, Commercial Risk Reinsurance Company Limited (Bermuda) ("CR Bermuda") and

Commercial Risk Re-Insurance Company (Vermont) ("CR Vermont") (together, "CR"), in

which SICH sought to recover losses relating to three workers' compensation programs under

five reinsurance treaties (the "Arbitration").

## **INTRODUCTION**

      1.     SICH was the insurer, and CR its reinsurer, for over 2,300 workers' compensation

insurance policies.  The parties' relationship was memorialized in five reinsurance treaties,

spanning the period March 15, 2000 to June 30, 2002, pursuant to which CR, as subscribing reinsurers, agreed to accept a percentage share of SICH's interests and liabilities in workers' compensation policies written in three workers compensation programs – the HPP Workers' Compensation Program (the "HPP Program"), the NHE Workers' Compensation Program (the "NHE Program"), and the ORS Workers' Compensation Program (the "ORS Program").

2.      By all contemporaneous accounts, the HPP, NHE and ORS Programs were well-run by their respective managing general agents/program managers – High Performance Programs Group ("HPP"), NHE Managers LLC ("NHE"), and Occupational Risk Service Managers LLC ("ORS") (collectively, the "MGAs").

3.      By all contemporaneous accounts, the HPP, NHE and ORS Programs operated to the satisfaction of SICH, the insurer, and CR, the reinsurer.

4.      In accordance with the terms of the five treaties, SICH issued cession statements to CR accounting for premiums and losses on the policies written in the HPP, NHE, and ORS Program, and remitted to CR their proportionate share of premium net of losses.

5.      CR accepted their quota share percentage of the premiums and paid losses without complaint for several years until SICH and CR entered run-off.

6.      After the SICH and CR performed a reconciliation of the HPP, NHE, and ORS Programs at year-end 2004, CR did not pay all amounts outstanding and did not pay future amounts as they came due either.

7.      As a result thereof, SICH commenced the underlying Arbitration in or about August 2005.

8.      The dispute in the underlying Arbitration centered on the five reinsurance treaties pursuant to which CR agreed to reinsure SICH for workers' compensation policies written by the

MGAs/program managers in the HPP, NHE and ORS Programs: (1) the HPP Quota Share Reinsurance Agreement incepting May 1, 2000; (2) the HPP Quota Share Reinsurance Agreement incepting May 1, 2001; (3) the NHE Quota Share Reinsurance Agreement incepting March 15, 2000; (4) the NHE Quota Share Reinsurance Agreement incepting March 15, 2001; and (5) the ORS Quota Share Reinsurance Agreement incepting September 1, 2001 (together, the "Treaties").

9.      The Arbitration Hearing lasted three days, during which SICH presented, and CR cross-examined, four factual witnesses and one expert, and the parties introduced a significant number of documents. The parties also submitted pre-hearing briefs on the issues in dispute. CR presented no witnesses at the hearing, although they had the opportunity to do so.

10.     During the Arbitration Hearing, CR argued that its failure to pay amounts billed by SICH under the Treaties was justified because thirty-seven of the 2,336 policies ceded to the Treaties had not been underwritten by the MGAs in conformity with applicable underwriting guidelines in that they lacked documentation of a referral by the MGA to SICH and thus losses on those policies were not covered. See Exhibit 11 (Higgins Opening) at 25:17-24, 32:2-33:8, 39:5-7.[1]

11.     During the Arbitration Hearing, SICH conclusively demonstrated that all of the business written by the MGAs was covered, and that CR's "zero tolerance" approach to the absence of referral documentation in thirty-seven policy files did not comport with the language of the Treaties, the custom and practice in the industry, or the course of conduct of the parties.

---

[1]    All Exhibits referenced herein are attached to the accompanying Declaration of Michele L. Jacobson, dated August 10, 2007 and incorporated by reference herein. Exhibit 11 is a copy of the transcript of the Arbitration Hearing; parentheticals after citations to Exhibit 11 name the witness whose testimony is cited.

12.     The evidence adduced at the underlying Arbitration Hearing soundly defeated CR's purported defense.

13.     The underlying Arbitration culminated in a unanimous Reasoned Award (the "Award"), which: directed CR Bermuda to pay SICH $2,512,816.79, plus interest in the amount of $330,478.21; directed CR Vermont to pay SICH $417,714.65, plus interest in the amount of $66,959.73; and declared that "the Treaties are binding and enforceable and that [CR] is required to remit payment pursuant to the terms of the applicable Treaties as cession statements are remitted." Exhibit 39 at ¶¶ 11, 12, and 14 (the Award).

14.     By this Petition, SICH now seeks confirmation of the Award and respectfully requests that this Court follow the mandate of Section 207 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. §§ 201-208) (the "Convention") and Section 9 of the Federal Arbitration Act (9 U.S.C. §§ 1-16) (the "FAA") and issue an Order confirming the Award and entering Judgment thereon.

## THE PARTIES

15.     SICH is an insurance company organized under the laws of the State of Delaware, with its principal place of business in Charlotte, North Carolina.

16.     Upon information and belief, Respondent Commercial Risk Reinsurance Company (Bermuda) is a reinsurance corporation, organized under the laws of Bermuda with its principal place of business in Pembroke, Bermuda.  It maintains offices in New York, New York.

17.     Upon information and belief, Respondent Commercial Risk Re-Insurance Company (Vermont) is a corporation duly organized under the laws of the State of Vermont, with its principal place of business in the New York, New York

## JURISDICTION AND VENUE

18.     Pursuant to 9 U.S.C. § 202, this action involves a contractual relationship that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208 because the Arbitration was not entirely between citizens of the United States.

19.     The Treaties are agreements between Petitioner and Respondents, pursuant to which Respondents, as subscribing reinsurers, accepted a quota share of the interests and liabilities of Petitioner SICH.

20.     The Treaties evidence transactions in commerce within the meaning of the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

21.     This Court has jurisdiction to hear this matter pursuant to 9 U.S.C. §§ 1, 2, 4, 203 and 28 U.S.C. § 1331.

22.     This Court has jurisdiction to hear this matter pursuant to 20 U.S.C. § 1332(2) as this is a dispute between a citizen of North Carolina/Delaware and citizens of New York/Vermont and Bermuda.

23.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

24.     The Arbitration was venued in New York, New York.

25.     Respondents CR reside in this judicial district.

26.     This judicial district is where a substantial part of the events or omissions giving rise to the claim occurred.

27.     Venue for this action in this Court is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**A.    Commencement of the Arbitration**

28.    The Treaties, which are identical to each other in all material respects other than program name, quota share percentage, limits, inception date, and termination date, provide that any disputes between SICH and CR are to be settled in a binding arbitration conducted in accordance with the procedure set forth in the arbitration clause (the "Arbitration Clause"):

> any dispute relating to the interpretation or performance of th[e] Contract, including its formation or validity, or any transaction under th[e] Contract, whether arising before or after termination, shall be submitted to arbitration.
>
> \*          \*          \*
>
> The decision in writing of the majority of the arbitrators shall be final and binding upon both parties.

Exhibits 1-5 at Article XXXII.

29.    The Arbitration Clause also sets forth the procedure through which a panel is to be chosen, stating that "each party shall choose an arbitrator and the two chosen shall select a third arbitrator" and that "the parties hereby waive all objections to the method of selection of the arbitrators, it being the intention of both sides that all the arbitrators be chosen from those submitted by the parties." Id.

30.    Commercial Risk's refusal to pay outstanding losses prompted SICH to commence the Non-DIG Arbitration, in accordance with the Arbitration Clause contained in the Treaties, by serving three separate Arbitration Demands – one for each of the HPP, NHE and ORS Programs – on August 2, 2005. Exhibit 6.

31.    In accordance with the Arbitration Clause of the Treaties, in its Arbitration Demands, SICH identified its party appointed arbitrator for each of the disputes and requested that CR appoint an arbitrator. Id. at 5.

**B.**   **Selection of the Panel**

32.    CR appointed an arbitrator and, based on a commonly used, agreed-upon process, the parties jointly selected a third arbitrator to serve as Umpire.  Jacobson Dec. ¶¶ 15-16.

33.    After a substantial award was issued in SICH's favor by the identical arbitration panel in another arbitration between the same parties, CR's party-appointed arbitrator withdrew from the Non-DIG Arbitration without explanation.  Id. at ¶ 19.

34.    At SICH's request, CR appointed a replacement arbitrator, but refused to proceed with the Non-DIG Arbitration Hearing with the previously agreed-upon Umpire on the previously agreed-upon dates of June 25-June 29, 2007.  Id. at ¶ 20.

35.    Thereafter, SICH filed a Petition to Compel CR to proceed with the Hearing.  Id. at ¶ 21.

36.    After the parties briefed the issues on an expedited basis and after the Court heard oral argument on the Petition, this Court granted SICH's Petition to Compel CR to proceed with the agreed-upon Umpire on the previously agreed-upon dates.  See Security Ins. Co. v. Commercial Risk Reinsurance Co., No. 07-CV-2772 (VM) (S.D.N.Y. May 8, 2007) (Exhibit 9).

37.    Thereafter, in accordance with the Court's Decision and Order, the parties proceeded with the Non-DIG Arbitration Hearing in New York, New York, as previously scheduled.

38.    The Panel presiding over the Non-DIG Arbitration Hearing was comprised of SICH's original party-appointed arbitrator, CR's replacement party-appointed arbitrator and the original, mutually selected, Umpire. (the "Panel").  Jacobson Dec. ¶ 22.

**C.**   **Evidence Adduced at the Arbitration Hearing**

39.    The Arbitration Hearing was conducted over three days, from June 25-27, 2007.

40.     The parties were provided a full and fair opportunity to present evidence to the Panel.

41.     SICH called four fact witnesses, including Marc Brown and Peter Carlin – the SICH underwriters for the HPP, NHE, and ORS Programs – and an expert witness.

42.     SICH presented evidence that the terms of the Treaties and the custom and practice of the industry with respect to program business required that the parties must reasonably attempt to ensure adherence to underwriting guidelines, but that alleged minor deviations from guidelines would not defeat coverage under the Business Covered clauses of the Treaties. Exhibit 11 at 40:8-80:4, 112:15-117:6 (Brown); id. at 118:16-213:14, 266:6-276:17 (Carlin); id. at 455:22-549:18, 583:5-585:18 (Macdonald).

43.     SICH adduced evidence establishing that the parties to the Treaties –SICH and CR– did not intend for the Business Covered clause of the Treaties to be interpreted so as to eliminate from coverage a small number of policies allegedly beset with underwriting guideline violations.  Id.   This testimony was unrebutted by CR.

44.     SICH presented evidence debunking CR's claim that thirty-seven policies lacked documentation of a referral.  See Exhibit 11 at 632:18-636:14 (Jacobson closing) (summarizing evidence).

45.     CR called no fact or expert witnesses.

46.     CR presented only the designated deposition testimony of NRC auditor Deepak Sachdev and his reports for the proposition that documentation of referrals was absent from thirty-seven policy files.  See generally Exhibit 11; see also Exhibit 10 (Sachdev depo.).

47.     The Hearing Record included the Treaties, Underwriting Guidelines, contemporaneous audit reports of the Programs, and documents establishing that with respect to

the NHE and ORS Programs, CR entered into originally concealed rent-a-captive arrangements with two of the MGAs. Exhibits 1-5 (Treaties); Exhibits 12-16 (Underwriting Guidelines); Exhibits 17-25 (audit reports); Exhibits 26-28 (rent-a-captive agreements); see also Exhibit 11 at: 293:17-298:25 (Passis).

48.    Each of the five Treaties at issue in this Arbitration includes an "Honorable Engagement" clause, which provides that:

> The arbitrators shall interpret th[e] Contract as an honorable engagement and not as merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. . .

Exhibits 1-5 at Article XXXII.

49.    SICH argued that the Honorable Engagement clause required the panel to consider as evidence industry custom and practice, as well as the parties' course of conduct, with respect to the implementation of underwriting guidelines. Exhibit 11 at 22:2-22; 605:22-607:3; 636:23-637:11.

50.    The Panel agreed that the Honorable Engagement clause required the panel to consider as evidence, industry custom and practice, as well as the parties' course of conduct with respect to the implementation of underwriting guidelines. Exhibit 39 (the Award) at ¶ 8.

51.    Each of the Treaties contains an Errors and Omissions Clause, which provides that:

> [a]ny inadvertent delay, error or accidental omission of either party shall not be held to relieve either party hereto from any liability which would attach to it hereunder if such delay, omission or error had not been made, provided such delay, omission or error is rectified upon discovery.

Exhibits 1-5 at Article XXII.

52.     The Panel cited the Errors and Omissions Clause of the Treaties as evidence of the parties' intent that the Underwriting Guidelines were not to be applied unwaveringly to determine reinsurance coverage for each policy written in the program.  Exhibit 39 (the Award) at ¶ 8.

53.     At the Hearing, SICH presented the testimony of an industry expert who testified that CR's "zero tolerance" interpretation of the Treaties was unreasonable, and inconsistent with industry practice.  Exhibit 11 at 547:2-549:7; see also id. at 501:18-502:11.

54.     The testimony of SICH's expert on this point was unrebutted.

55.     At the Hearing, SICH presented the testimony of the underwriters responsible for the HPP, NHE, and ORS Programs who testified that a "zero tolerance" approach to compliance with underwriting guidelines was contrary to the custom and practice in the industry.

56.     SICH underwriter Marc Brown testified that in his own experience, CR's coverage position was not normal or supportable.  Id. at 78:14-18; 79:2 – 80:3.

57.     SICH underwriter Peter Carlin testified "that the allegations that the policies in question aren't coverable is a specious assertion."  Id. at 121:23-25.

58.     SICH underwriter Peter Carlin testified that "[t]his is the first I have ever heard of [a reinsurer of program business who finds a policy ceded to a treaty without a referral to insist on backing it out]."  Id. at 212:13-18.

59.     SICH underwriters testified that CR was provided with, and participated in, audits of the HPP, NHE and ORS Programs.  Exhibit 11 at 57:10-75:5; 58: 8-77:20; 75:21-77:20 (Brown); id. at 164:2-165:13, 196:19-197:3, 198:22-199:13 (Carlin).

60.     SICH underwriters testified, and documents demonstrated, that through these audits, CR learned of certain instances of policies written in the HPP, NHE and ORS Programs

that were not referred in accordance with Underwriting Guidelines. See id. at 57:10-75:5; 58: 8-77:20; 75:21-77:20 (Brown); id. at 158:11-199:13 (Carlin).

61.     SICH underwriter, Marc Brown, testified that despite this knowledge, CR renewed their participation in the HPP Program. Id. at 75:6-16.

62.     SICH underwriters testified that despite this knowledge, CR never objected to the HPP, NHE, or ORS Programs. Id. at 68:2-19, 77:21-78:13 (Brown); id. at 198:22-199:13 (Carlin).

63.     SICH underwriters testified that despite this knowledge, CR never raised the absence of referrals as an issue, never demanded that a non-referred policy be backed out, and never advised SICH that they would not cover a policy that had not been referred. Id. at 68:2-19, 75:6-16, 77:21-78:13 (Brown); id. at 164:2-165:13, 196:19-197:3, 198:22-199:13 (Carlin).

64.     SICH's expert testified that evidence he found in the files and correspondence among the parties demonstrated there had been referrals with respect to most, if not all, of the thirty-seven challenged policies. Id. at 526:19-532:16, 590:5-571:8 (Macdonald).

65.     André Lefebvre, the Financial Risk Officer of SICH's parent company, testified regarding SICH's damages from CR's failure to pay. See, generally, Exhibit 11 at 378:14–455:7 (Lefebvre).

66.     Mr. Lefebvre testified to the chronology of SICH's billings to CR, CR's failure to pay, the negotiations between the two entities, and the method by which Mr. Lefebvre calculated the amounts currently owed by CR. Id. at 380:21-389:25; 390:2-407:16, 416:24-421:18 (Lefebvre); Exhibits 29-34 (Damages Exhibits).

67.     Mr. Lefebvre testified regarding payments made by CR including the application of letters of credit that were drawn down at CR's direction.  Exhibit 11 at 408:9-413:23 (Lefebvre).

68.     SICH submitted exhibits quantifying its damages.  See Exhibits 29-34.

69.     With respect to each of the HPP, NHE and ORS Programs, Mr. Lefebvre presented four alternative interest calculations on the outstanding amounts owed by CR for the Panel's consideration:  4.5 percent, 8 percent, 9 percent, and 10 percent, representing SICH's historical rate of investment return, the North Carolina statutory interest rate, the New York statutory interest rate and the Connecticut statutory interest rate, respectively.  See Exhibits. 32, 33, and 34.

70.     Mr. Lefebvre also testified to CR's dilatory, and other conduct, upon which SICH's based its claim for additional damages.  Exhibit 11 at 422:10-423:8.

**D.     The Panel's Issuance of The Award**

71.     On July 9, 2007, a unanimous Panel issued a reasoned award in SICH's favor in the amount of $2,930,531.44 in damages, with interest at the 4.5% historical rate of investment return, in the amount of $397,437.94.  Exhibit 35.

72.     The effective date of the award was July 10, 2007.

73.     The Panel awarded interest at the rate of 10 percent on any balance that remained unpaid thirty business days from the effective date of the award.  Id.

74.     The Panel declared that the Treaties were binding and enforceable, and that CR was to make payments, pursuant to the terms of the applicable Treaties, as future cession statements are remitted, and that CR could not raise as a defense to payment any issues brought before the Panel.  Id.

75.    The Panel did not award punitive or exemplary damages based on CR's dilatory conduct. Id.

76.    On July 10, 2007, counsel for SICH informed the Panel and the parties via email of a potential typographical error, which the Panel acknowledged and corrected the same day. See Exhibit 36.

77.    On July 11, 2007 CR asked the Panel to reconsider those portions of the award that granted interest at 10% per annum on any unpaid balance after thirty business days, and that restricted CR from advancing in the future any defenses to payment already raised in the Arbitration. See Exhibit 37 at 4-5.

78.    CR also requested that the award be physically signed by all three Panel members, and that the amount of damages and interest awarded be broken out between CR Bermuda and CR Vermont. Id.

79.    The Panel denied the request for reconsideration, but indicated that the award would be signed by each of the arbitrators, and asked SICH to provide a breakdown of the payment amounts between CR Bermuda and CR Vermont. Id. at 3.

80.    SICH complied with the Panel's request and, after being requested to do so by CR, explained how it arrived at the breakdown. Id. at 1-3.

81.    On July 14, 2007, after receiving SICH's breakdown and explanation, the Panel issued a modified award (the "Award") that contained separate figures for CR Bermuda and CR Vermont, but was in all other ways, identical to the initial written award (save for the typographical errors that had earlier been corrected by the Panel). Compare Exhibit 35 with Exhibit 39.

82.     In the email accompanying the Award, the Panel confirmed that liability was

several as between CR Bermuda and CR Vermont. See Exhibit 38.

83.     The Award retained its July 10, 2007 effective date and was signed by each of the

arbitrators. Exhibit 39.

84.     In the Award, the Panel articulated its decision as follows:

> After reviewing the Treaties, in particular the "Arbitration" clauses
> (which state, inter-alia, that "*(t)he arbitrators shall interpret this
> contract as an honorable engagement and not merely a legal
> obligation*"), and the "Errors and Omissions" clauses, the conduct
> of the Respondents during the terms of the Treaties (in particular
> the actions of certain staff of Respondents who participated in
> audits conducted by Petitioners and/or conducted their own audits
> and/or were in communication directly with personnel from the
> Program Administrators and/or agreed referrals directly with the
> Program Administrator without reference to Petitioners) and after
> considering customs and practices in this area of the reinsurance
> industry, the Panel concluded that while the general intent of the
> parties was to attempt to ensure that any business written . . . was
> written so as to be in accord with all requirements of any
> Underwriting Guideline, it was not a specific intent that any
> particular policy straying from a strict ruling of the Business
> Covered Clause (as such relates to Underwriting Guidelines)
> would not be covered by the Treaties, unless:
>
> (a) that particular policy was for a class or type of business not
> contemplated by the Underwriting Guidelines or allowed per the
> Treaties [such as an aviation risk which would not be covered
> regardless of whether it was otherwise written in compliance with
> Underwriting Guidelines], . . . . or
>
> (b) Respondents could establish . . . that deviations from the
> Underwriting Guidelines were frequent and flagrant . . . .

Id. at ¶ 8 (emphasis added).

85.     CR did not dispute that all of the challenged policies covered workers

compensation risks. Exhibit 10 at 36:8-15 (Sachdev depo.); Exhibit 11 at 461:19-462:22,

494:10-23 (Macdonald).

86.    CR did not argue that lapses in referrals were "frequent and flagrant" and ignored by SICH.  Exhibit 39 at ¶ 8(b).

87.    The evidence adduced at the Arbitration Hearing would not support an argument that lapses in referrals were "frequent and flagrant."

88.    The Panel rejected CR's zero tolerance argument and therefore concluded that it did not have to engage in a policy-by-policy referral analysis.  Id. at ¶ 9.

89.    The Panel, which was comprised of experienced reinsurance professionals as required by the Treaties, relied on the customs and practices of the industry in rendering its Award.

90.    The Panel noted its reliance on the fact that Treaties incorporated an Honorable Engagement provision and an "Errors and Omissions" clause.  Exhibit 39 at ¶ 8.

91.    The Panel relied on the parties' conduct during the course of the Programs, including CR's conclusion that the MGAs "were doing a reasonable job", and the absence of any contemporaneous objection by CR to the known lapses in referrals.  Exhibit 39 at ¶ 8(b) ("Petitioners and Respondents, it was particularly noted by the Panel, were aware that several lapses in referrals were found to have happened and that Respondents did or said nothing about that at the time.").

### COUNT I
### (Pursuant to 9 U.S.C. § 9 Confirming the Panel's Award)

92.    SICH repeats and realleges each of the allegations set forth in paragraphs 1 through 91 of the Petition to Confirm Arbitration Award as if fully set forth herein.

93.    Pursuant to the Treaties, the parties agreed that Judgment could be entered upon a final decision of the arbitrators in any court having jurisdiction.

94.    The Award is a final decision of the arbitrators.

95.     This Court has jurisdiction pursuant to 9 U.S.C. §§ 1, 2, and 4, and 28 U.S.C. §§ 1331 and 1332(2).

96.     CR participated in a fundamentally fair hearing wherein they had the opportunity to be heard, to present evidence, and to argue their claims.

97.     The Award has not been vacated, modified, or corrected, and there is no basis for vacatur, modification, or correction of the Award under the Federal Arbitration Act, 9 U.S.C. §§1-16.

98.     Pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, SICH is entitled to judicial confirmation of the Award.

99.     Pursuant to the Treaties, the Award, and the provisions of 9 U.S.C. § 9. Judgment should be entered in favor of SICH and against CR.

## COUNT II
### (Pursuant to 9 U.S.C. § 207 Confirming the Panel's Award)

100.     SICH repeats and realleges each of the allegations set forth in paragraphs 1 through 91 of the Petition to Confirm Arbitration Award as if fully set forth herein.

101.     Pursuant to the Treaties, the parties agreed that Judgment could be entered upon a final decision of the arbitrators in any court having jurisdiction.

102.     The Award is a final decision of the arbitrators.

103.     This Court has jurisdiction pursuant to 9 U.S.C. § 203, and 28 U.S.C. §§ 1331 and 1332(2).

104.     CR participated in a fundamentally fair hearing wherein they had the opportunity to be heard, to present evidence, and to argue their claims.

105.    There are no grounds for refusal or deferral of recognition or enforcement of the Award under the Convention on the Enforcement and Recognition of Foreign Federal Arbitral Awards, 9 U.S.C. §§ 201-208.

106.    Pursuant to 9 U.S.C. § 207, SICH is entitled to judicial confirmation of the Award.

107.    Pursuant to the Treaties, the Award, and the provisions of 9 U.S.C. § 207, Judgment on the Award should be entered in favor of SICH and against CR.

**WHEREFORE**, Petitioner SICH demands judgment granting the Petition to Confirm the Arbitration Award and awarding the following relief:

A.      an Order confirming the Award, effective July 10, 2007, issued by the Panel on July 14, 2007 and bearing a signature date of July 16, 2007;

B.      a Judgment that CR Bermuda is directed to pay Petitioner $2,512,816.79, representing its balance due under the Treaties;

C.      a Judgment that CR Vermont is directed to pay Petitioner $417,714.65, representing its balance due under the Treaties;

D.      a Judgment that CR Bermuda is directed to pay Petitioner $330,478.21, which represents the pre-Award interest on the balances due;

E.      a Judgment that CR Vermont is directed to pay Petitioner $66,959.73, which represents the pre-Award interest on the balances due;

F.      a Judgment that any amounts not paid by August 21, 2007, which is thirty business days from the effective date of the Award, shall accrue at an interest rate of 10% per annum;

G.      a Judgment that if either or both of Respondents fail to make the payments directed in the paragraph above, Petitioner may draw down upon security posted by CR in the form of letters of credit from BNP Paribas, LOC No. 91889854, in the amount of $848,395.00, and LOC No. 91889856, in the amount of $212,099.00 to partially satisfy the amounts so due;

H.    a Judgment declaring that the five Treaties that were the subject of the Arbitration between SICH and CR – the NHE Quota Share Reinsurance Agreement incepting March 15, 2000, the NHE Quota Share Reinsurance Agreement incepting March 15, 2001, the ORS Quota Share Reinsurance Agreement incepting September 1, 2001, the HPP Quota Share Reinsurance Agreement incepting May 1, 2000, and the HPP Quota Share Reinsurance Agreement incepting May 1, 2001 – are binding and enforceable;

I.    a Judgment declaring that Respondents are required to remit payment pursuant to the terms of the Treaties as cession statements are issued to them;

J.    a Judgment declaring that Respondents may not raise as a defense to future payments any issue already brought before the Arbitration Panel.

K.    a Judgment awarding SICH its costs in this action; and.

L.    a Judgment awarding any such other relief as this Court deems appropriate.

Dated: New York, New York
            August 10, 2007

STROOCK & STROOCK & LAVAN LLP

By:    _____
            Michele L. Jacobson (MJ 4297)
*Attorneys for Petitioner*
180 Maiden Lane
New York, New York 10038
(212) 806-5400