758VSECC                        Order to Show Cause

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  SECURITY INSURANCE COMPANY OF
   HARTFORD,
4
                    Plaintiff,
5
              v.                        07 CV 3277 (VM)
6
   COMMERCIAL RISK REINSURANCE
7  COMPANY, LTD.,

8                   Defendant.

9  ------------------------------x
                                   New York, N.Y.
10                                 May 8, 2007
                                   10:40 a.m.
11
   Before:
12
                       HON. VICTOR MARRERO,
13
                                   District Judge
14
                          APPEARANCES
15
   STROOCK & STROOCK & LAVAN
16      Attorneys for Plaintiff
   BY:  MICHELE L. JACOBSON
17      REGAN A. SHULMAN
        CHRISTIAN FLETCHER
18
   D'AMATO & LYNCH
19      Attorneys for Defendant
   BY:  JOHN P. HIGGINS
20      EDWARD M. ROTH
          -AND-
21  LAW OFFICES OF DAVID L. FERSTENDIG
   BY:  DAVID L. FERSTENDIG
22

23

24

25

758VSECC                    Order to Show Cause

1          (In open court)

2          (Case called)

3          THE COURT:  This is a proceeding in the matter of

4    Security Insurance Company v. Commercial Risk Reinsurance

5    Company, docket number 07 CV 3277.

6          The Court has before it plaintiff's motion and

7    petition to compel arbitration.  The parties have submitted

8    briefings on the issue; the matter is fully briefed.  And the

9    Court scheduled this proceeding to hear whatever additional

10   points the parties may wish to stress for the record beyond

11   what is already in the papers that the Court has thus reviewed.

12         In particular, the Court believes that the basic

13   question is on what grounds should there be the reconstituting

14   of a panel that is requested by defendants under these

15   circumstances.

16         For the plaintiffs, who speaks, Ms. Jacobson?

17         MS. JACOBSON:  Yes, your Honor.

18         THE COURT:  Yes.

19         MS. JACOBSON:  We represent the petitioner in this

20   proceeding.  We believe that the respondent's admissions in

21   this case is set forth in their answer to the petition, as well

22   as the parties' agreement and the case law all establish that

23   what the respondents are seeking to do here, reconstituting the

24   panel, is completely without basis; and that, in fact, the

25   parties' agreement and the case law demonstrates that the

758VSECC                    Order to Show Cause

1    petition to compel arbitration should be granted.

2              In particular, I want to point out several of the

3    facts which are admitted.

4              First, respondents have admitted that there is an

5    agreement to arbitrate.  Second, the respondents agree that the

6    parties selected Mr. David Thirkill as the umpire; and that the

7    defendants have agreed that prior to Mr. Dielmann's

8    resignation, the parties agreed to proceed with the non-DIG

9    arbitration during the week of June 25th.  And they admit that

10   they have refused to proceed with the proceeding on June 25th

11   with the designated umpire.

12             Now, I think it's important to take a look at the

13   parties' arbitration agreement.  And that is set forth at

14   Exhibit 1 to my declaration.

15             Under the arbitration provision, which is located on

16   page 18 of Exhibit No. 1, it plainly states that the parties

17   each select their own arbitrator, and together those

18   arbitrators select a third arbitrator whom the parties in this

19   matter have called the umpire.  And I'm, frankly, mystified

20   that the respondents would argue that Mr. Thirkill was the

21   umpire, because if you would note, attached to Exhibit 1 of my

22   reply declaration is the cover of their position statement

23   noting that Mr. Thirkill is the umpire.

24             But, at any rate, if we go further into the provision,

25   it says that, The parties hereby waive all objections to the

758VSECC                    Order to Show Cause

1   method of the selection of the arbitrators; it being the

2   intention of both sides that the arbitrators be chosen from

3   those submitted by the parties.  So once an arbitrator is

4   selected, you can't complain about how they were selected.  And

5   importantly, if we look a little further up in the provision,

6   it states that the hearing is to take place within 30 days of

7   the appointment of a third arbitrator.

8          Now, the parties agree to modify this provision to

9   require that the hearing take place on the week of June 25th.

10  So that is the amendment to this provision.  We have an

11  agreement to arbitrate on June 25th.  And Security Insurance

12  Company of Hartford has not not agreed to amend that change.

13         So what we have here is we have the fact that there

14  can be no challenges to the method of umpire selection, and we

15  have contractually-agreed-upon dates.  That comes out of the

16  parties' arbitration provision.

17         Now, Commercial Risk, the respondents here, are

18  claiming that they can use the resignation of their

19  party-appointed arbitrator to essentially bring this

20  arbitration back to its inception as though that umpire

21  selection had never occurred, as though the parties had never

22  given hold-harmless agreements to the entire panel and agreed

23  to the selection of the panel.

24         They claim that it's unfortunate that their arbitrator

25  resigned; but, however, what they are doing is they are

1    attempting to use that to their advantage.  They are attempting

2    to take the resignation of their arbitrator and use it as a

3    means to displace the umpire who was chosen by both of the

4    parties, but who had previously ruled against them in the DIG

5    arbitration.

6          Now, how did they find support for their claim?  Well,

7    I would submit there is none.  They cite what is called a

8    general rule on panel vacancies.  But the rule that's expressed

9    by the Second Circuit in the *Marine Products* case was two

10   faceted:  First off, the arbitrator died.  And most

11   importantly, the matter was what's called *in medias res*, in the

12   heart of the matter.

13         In *Marine Products*, the party arbitrator died after

14   there had been an evidentiary hearing at which a very important

15   witness had testified.  There had been submission of evidence

16   to the panel, and there had been additional interlocutory

17   rulings.  In that case, coming up on a motion to vacate, the

18   Second Circuit said, We're not going to vacate the district

19   court's order reconstituting the panel where the matter was *in*

20   *medias res*.

21         Now, the *Trade and Transport* case, also decided by the

22   Second Circuit, said, Well, wait a minute.  It's not an

23   automatic that you reconstitute the entire panel when an

24   arbitrator dies.  You have to look to see whether or not there

25   are special circumstances, including the parties' agreement,

758VSECC                       Order to Show Cause

1    and also including the procedural posture of the case.

2                And in *Trade and Transport*, where there was nothing

3    currently pending before the panel, the Court ordered a

4    replacement arbitrator.  And specifically, the Second Circuit

5    said that, in essence, there would be no need to filling a

6    vacancy, the language "filling a vacancy" in Section 5 of the

7    FAA.  It would, "make no sense if the act were construed to

8    require that whenever one arbitrator died, the entire panel

9    must be removed."  And that is at 196 of the *Trade and*

10   *Transport* case.

11               So in that situation, since there was nothing

12   currently pending before the arbitration panel, the Court found

13   that replacement, not complete going back to day one, was

14   required.

15               We are very similar to the posture in *Trade and*

16   *Transport*.  Nothing is pending currently before the panel.

17   There was an organization meeting over a year ago.  There was

18   an order of prehearing security that was entered by the panel.

19   Now, that order of prehearing security is a final order of the

20   panel, not revisited.

21               Under the *Banco de Seguros v. Mutual Marine* case, the

22   Second Circuit 2003, the Second Circuit held that an award of

23   prehearing security is the final order of the panel such that

24   you could move to vacate it.

25               So we are in a similar situation to *Trade and*

758VSECC                    Order to Show Cause

1  | *Transport* where there had been an order, a final order, issued

2  | by the panel, but nothing currently pending.

3  |        Now, frankly, we are on all fours.  We are very close

4  | to the *Trade and Transport* situation.  We are not at all in the

5  | situation of the *Marine Products* case where right in the middle

6  | of evidence being heard.  We have none of that here.

7  |        Defendants also cite to the *Pemex* case.  They claim

8  | that the facts of that case show that the panel had issued a

9  | procedural ruling.  That's completely untrue.  The *Pemex* case,

10 | the facts are clear that the entire evidence had been submitted

11 | before the arbitration panel, all documentary evidence, all

12 | testimony, and, in fact, what was going on was post-hearing

13 | briefing when the arbitrator died.

14 |        So we don't believe that the general rule, to the

15 | extent that there is one, should apply in this instance.  And

16 | that what is required, we believe, is the replacement of the

17 | one arbitrator who resigned.

18 |        Now, I don't think that there's a doubt that we had a

19 | panel vacancy.  Your Honor can appoint a replacement under

20 | Sections 5 and 206 of Title 9.  We contend that there is a

21 | lapse because the court-appointed arbitrator which they have

22 | selected has refused to disclose whether or not he's

23 | disinterested.  And we asked him to make those disclosures a

24 | month ago.  He has not disclosed whether he's disinterested.

25 | And Commercial Risk has stated nothing in their papers which

758VSECC                    Order to Show Cause

1   would inform us or your Honor whether or not he is, in fact,

2   disinterested or whether or not he's available to appear as

3   arbitrator on the June 25th hearing date.

4           I want to make it clear that if Mr. Gentile is, in

5   fact, disinterested, we are prepared to proceed before

6   Mr. Gentile, Mr. Thirkill, and Mr. Haber on June 25th.

7   However, if they are unwilling or unable to make

8   representations concerning his disinterestedness or his

9   availability to your Honor, we would ask that your Honor order

10  a replacement arbitrator.  Thank you.

11          THE COURT:  Thank you.  Mr. Higgins?

12          MR. HIGGINS:  Thank you, your Honor.  I'd like to

13  start by talking about what the Arbitration Act provides so

14  that we can narrow the scope of the discussion.

15          The courts have avoided and the legislature obviously,

16  Congress obviously, avoided the issue of the judge or the

17  courts getting involved in the details of an arbitration.

18  There is provision for an order to arbitrate.  There's no

19  provision allowing a court to get involved when an arbitration

20  takes place, how an arbitration takes place, where an

21  arbitration takes place, and that sort of thing.  Witnesses,

22  evidence, those are left for the arbitrators.  And in this

23  case, procedures by virtue of the agreement are left to the

24  arbitrators.  So we can start with the idea that no matter who

25  the panel is that this proceeds before, it's for the panel to

1    decide how it goes forward.

2            Now, reverting to the issue, it seems to us kind of

3    odd that we would be dealing with allegations of manipulation

4    throughout the whole process, and then at this argument we deal

5    with case law, which is what we intended to try to focus on

6    from the beginning.

7            As the Court knows, we are faced with quite a bit of

8    material which made allegations of wrongdoing by our firm, by

9    our clients, and by the arbitrator who resigned.  An expert

10   affidavit was put in basically which parroted those

11   allegations.  They talked about the catastrophe that this

12   process would have on reinsurance arbitrations.  The

13   implication, more than an implication, we would say, is that

14   the resignation was a manipulation; was, in essence, a

15   conspiracy; that we directed it.  Those words are used in the

16   expert conspiracy-ism, but that counsel directed it.

17           This obviously is not something that we believe the

18   courts should allow, tossing around these wild unsubstantiated

19   allegations, and then backing away, but not backing away.  Even

20   in the argument this morning, the statement was made that the

21   reason we want to go through this process is because there was

22   an unfavorable ruling in the other arbitration.  That obviously

23   is irrelevant, unless there's a reason why it would be

24   relevant.  And the only reason it could be relevant is if we

25   created the situation.  And we believe that we are entitled to

758VSECC                    Order to Show Cause

1    a hearing on the facts and circumstances of the resignation so

2    that we can establish that this is not a case where the

3    resignation was caused by or agreed with an arbitrator for an

4    ulterior improper purpose.

5              And we are advised, assured, actually, that the

6    arbitrator, T. O. Dielmann, will come to this country, and will

7    testify.  Actually, he's anxious to testify to clear his name,

8    really, after having been accused of the things he's been

9    accused of, not only by Security Insurance, but also by the

10   expert that's submitted the affidavit.

11             Now, these documents have not been withdrawn, so we

12   have to assume that they are still part of the record, because

13   Security Insurance expects the Court to rely on them.  And we

14   believe that we should be able to put in evidence to prove the

15   facts and to show how we got here and why we got here.

16             Now, turning to the law.  A statement was made that

17   the general rule, and I think it's a quote, to the extent that

18   there is a general rule -- well, that's not accurate.  There is

19   a general rule.  And it's repeated in *Trade and Transport*.

20   There was a general rule before that, because obviously they

21   are not making a rule, they are stating the existence of a

22   rule.  The rule is modified in some instances where there are

23   special circumstances.  None of the cases cited have any

24   circumstance anywhere near what we have here.  Cases where you

25   have a bifurcation, you have a ruling on the first issue, is

758VSECC                        Order to Show Cause

1   obviously not apt, not pertinent to this case here.  We don't

2   have any final rulings on material issues going to the merits.

3           Here, there is really no difference in terms of

4   special circumstances between going ahead in one fashion or the

5   other.  There hasn't been any statement as to why there's any

6   proprietary interest as it were in proceeding with the two

7   arbitrators that remain.

8           If a third arbitrator is selected now, presumably

9   neutral, it won't cause any material delay.  Nothing's really

10  been done other than some discovery, which obviously wouldn't

11  be redone.  It would take very little time for a new arbitrator

12  to educate himself, no more than it would take the arbitrator

13  that we have appointed to educate himself.

14          THE COURT:  Mr. Higgins, you are addressing the

15  questions of what would not happen.  But address the question

16  of what prejudice there is to you for the process to proceed at

17  this point.  What is to be lost?

18          MR. HIGGINS:  What is to be lost with what, your

19  Honor?  I'm sorry.

20          THE COURT:  With proceeding from where we are now, as

21  opposed to starting all over again with the designation of new

22  arbitrators; replacing the arbitrator who resigned and moving

23  along as opposed to starting all over again.

24          MR. HIGGINS:  The prejudice to us?

25          THE COURT:  Yes.

758VSECC                    Order to Show Cause

1        MR. HIGGINS:  The prejudice to us is that we wouldn't

2   be entitled to what we are entitled to under case law, which is

3   selection of a new panel.  If we are entitled to that right, we

4   want to enforce that right.

5        THE COURT:  All right.  So that assumes your reading

6   of the case law.

7        MR. HIGGINS:  Yes.

8        THE COURT:  All right.

9        MR. HIGGINS:  And if we are not entitled to it, then

10  so be it.  We allege and we assert that the case law, the

11  general rule, applies here; and there is no exception which

12  fits these facts.

13       And we also ask for a hearing on the facts and

14  circumstances of the withdrawal which Security Insurance has

15  alleged is material under *Trade and Transport*.  And that being

16  the case, we would like to establish the material facts

17  associated with that withdrawal.

18       THE COURT:  All right.  Thank you.

19       MS. JACOBSON:  Your Honor, may I respond?

20       THE COURT:  Quickly.

21       MS. JACOBSON:  Yes, your Honor.  I want to clear the

22  record.  We certainly did not make any allegations in our

23  papers as to the precise reasons for the withdrawal.  When we

24  received the e-mail from Mr. Dielmann stating that he was

25  withdrawing, he noted in his e-mail that it had been after

758VSECC                    Order to Show Cause

1   in-depth deliberation.

2           When we made inquiry of Mr. Higgins as to whether or

3   not there had been communications with Mr. Dielmann in light of

4   that language in the e-mail, they wrote back and they said

5   we're not telling you anything.  And those are the facts as we

6   set them out in the brief.  There were no accusations.

7           Now that we have the representation that Commercial

8   Risk nor Mr. Higgins' firm asked Mr. Dielmann to resign, we're

9   satisfied with that.  But we believe that the fact that they

10  did not respond to us when we asked the question in setting

11  that out in a factual format, to the extent that there are

12  negative inferences to be drawn from that, I can't help that.

13  The facts are what the facts are.

14          With respect to the contention that they are entitled

15  to a hearing, I would point the Court to *Interocean Shipping*

16  *Company v. National Shipping and Trading Corporation,* 462 F.2d

17  673 (2d Cir. 1972).  The Court held there that in order to have

18  a hearing with respect to a motion to compel arbitration, the

19  proponent of the hearing has to have an unequivocal denial that

20  the agreement to arbitrate had been made.  And here, there is

21  no unequivocal disagreement that there is an arbitration

22  agreement here.  So under the *Interocean* case, your Honor, no

23  hearing is necessary.  Your Honor is free to rule.  Thank you.

24          THE COURT:  Thank you.

25          MS. JACOBSON:  Oh, and one item further, your Honor.

758VSECC                    Order to Show Cause

1   We would ask that you retain jurisdiction of this matter

2   following your Honor's rulings.  Thank you.

3           THE COURT:  All right.  Thank you.  Yes, Mr. Higgins?

4           MR. HIGGINS:  Just a couple of really quick points.

5   The statute talks about two things; one is the existence of the

6   agreement to arbitrate, and the other is whether a party is in

7   default.

8           We have appointed an arbitrator.  We have asked him to

9   contact the other arbitrator under the arbitration agreement

10  and proceed.  We take the position we're not in default.  That

11  obviously is a question of fact, as well perhaps is a question

12  of law.  And we think that entitles us to a hearing so long as

13  the circumstances of the withdrawal are material to the issue.

14          On the other point, in terms of deliberation, we

15  didn't really understand the implication that was trying to be

16  made from that.  So we looked up the word in the dictionary?

17  Deliberation doesn't require two people.  Mr. Dielmann

18  indicated that he had deliberated, and we would like to bring

19  him here and have him testify as to all the circumstances of

20  his deliberation.  We certainly don't recognize a right of

21  counsel to demand of us anything in connection with our

22  communications with Mr. Dielmann.  If they have a right to

23  question Mr. Dielmann, they can direct their communications

24  with him.

25          THE COURT:  All right.  Thank you.  I've reviewed the

758VSECC                    Order to Show Cause

1    papers sufficiently and heard the arguments.  I am persuaded

2    that plaintiffs are entitled to an order to compel arbitration.

3    I think the record is clear that there is an agreement here to

4    arbitrate in accordance with the schedule that had been set

5    forth for June 25th.  There is no indication on the record that

6    that agreement or that schedule had been modified in any way

7    mutually.

8         I believe that the resignation of the respondent's

9    arbitrator under these circumstances does not give rise to a

10   requirement that the entire panel be reconstituted under these

11   circumstances.

12        I don't believe this case falls under the rule of

13   *Marine Products*; and that it falls more closely into the

14   circumstances in *Trade and Transport*.

15        The fact that in *Marine Products* there had been

16   proceedings already on the way, evidence taken, and substantial

17   progress towards the resolution or adjudication on the merits

18   is not a fact here, and there's nothing in the record to

19   indicate that this process had gone far enough to cause any

20   form of prejudice by having the replacement of one arbitrator

21   who has resigned.  I don't see those circumstances present

22   here.

23        I do not believe that the rule that the respondents

24   claim they are entitled to applies in this case.  I read the

25   rule to suggest rather that because there have not been any

758VSECC                    Order to Show Cause

1    material progress or proceedings towards addressing the merits

2    or evidence taken on any other major procedural steps, that

3    would have caused prejudice if the proceeding continued under

4    the same arbitrators as present here.

5            I also do not believe that a hearing here to go into

6    the facts and circumstances of the resignation are indicated.

7    I don't see that that's material to the issue of whether the

8    process should not proceed with simply by the designation of a

9    new arbitrator by the respondents.

10           The proceedings should continue as scheduled with the

11   respondents designating a substitute.  And if the person who is

12   designated for any reason is not prepared to indicate

13   disinterest in this, perhaps that issue could be revisited

14   here; but short of that, I am going to order that the

15   proceedings continue as scheduled pursuant to the parties'

16   agreement.

17           Is there anything else, Ms. Jacobson?

18           MS. JACOBSON:  I just repeat our request, if your

19   Honor would retain jurisdiction over this matter.

20           THE COURT:  For what purpose, Ms. Jacobson?

21           MS. JACOBSON:  For any further issues that could arise

22   as a result of the arbitration moving forward, as well as to

23   confirm an arbitration award that may be later rendered by the

24   panel.

25           THE COURT:  Mr. Higgins?

758VSECC                    Order to Show Cause

1           MR. HIGGINS:  Yes.  We would oppose retaining

2    jurisdiction for other than the possibility of enforcing an

3    award.  We don't see anything about the Court's award which is

4    non-final at the moment.

5           THE COURT:  Well, I'll consider that issue.  The Court

6    believes the granting of the relief here, which is order

7    compelling arbitration, is a final award.  If there's any

8    reason why that order needs to be reopened, Ms. Jacobson, you

9    could just address whatever the circumstances may be and I'll

10   take it into consideration.

11          MS. JACOBSON:  Okay.  Thank you, your Honor.

12          THE COURT:  All right.  Thank you.

13                       *      *      *

14

15

16

17

18

19

20

21

22

23

24

25